## E. J. KELLEY V. A. J. SEAY.

1. BOND—*Damages.* When suit is instituted upon a bond containing a penalty clause, unless the petition alleges and the plaintiff establishes that he has sustained damages he is not entitled to recover.

2. SAME—*Penalty.* In general, a sum of money in gross to be paid for the non-performance of an agreement is considered a penalty. It will not, of course, be considered as liquidated damages. Much stronger is the inference in favor of its being a penalty when it is expressly reserved as one. The parties themselves denominate it a penalty, and it would require very strong evidence to authorize the court to say that their own words do not express their own intention. (*Taylor v. Sanford*, 7 Wheat. 13. Marshall, C. J.)

3. SAME—It has become a settled rule that no other sum can be recovered under a penalty than that which shall compensate the plaintiff for his actual loss

*Error from the District Court of Kingfisher County.*

### STATEMENT OF THE CASE.

This is an action filed in the probate court of Kingfisher county, on the 24th day of September, 1892, by E. J. Kelley against A. J. Seay, praying for judgment on a promissory note for the sum of $225 and interest on his first cause of action, and for his second cause of action prays for judgment for $312.50 and interest for failure to comply with the conditions of a contract and obligation, which is in words and figures following, to-wit:

"Know all men by these presents, that I, A. J. Seay, of the village of Kingfisher, county of Kingfisher and Territory of Oklahoma, do hereby hold and firmly bind myself unto E. J. Kelley, of the same village, county and territory, in the sum of three hundred and twelve and 50-100 dollars, to be paid to the said E. J. Kelley, his heirs, executors, administrators or assigns, to which payment well and truly made, I bind myself, my heirs, executors, assigns and administrators.

"The conditions of this obligation are such that in consideration of the said E. J. Kelley selling and conveying by deed of general warranty to said A. J. Seay a certain tract of land situated in the county of Kingfisher, Territory of Oklahoma, described as follows, to-wit:

"Commencing at the N. W. corner of the S. W. quarter of section 22, township 17, range 7 west of Indian meridian, running thence south forty rods along the section line, thence east sixty rods, thence north forty rods, thence west sixty rods along the half section line of said quarter section to place of beginning, containing fifteen acres, for the sum of six hundred and thirty-seven and 50-100 (637.50) dollars.    Said A. J. Seay agrees with the said E. J. Kelley, that he, the said A. J. Seay, will erect and build on said described tract of land, between the date hereof and the 1st day of February, 1892, a residence house costing not less than the sum of fifteen hundred (1500) dollars.

"Now, if the said A. J. Seay does build, erect and complete the said residence house as aforesaid, in the time and at the cost aforesaid, then this obligation to be null and void, otherwise to be in full force and effect.

"Witness my hand this 28th day of July, 1891.

"(Signed)                                A. J. SEAY."

On the 14th day of November, 1892, the defendant, A. J. Seay, filed a plea in abatement to the first cause of action, and his answer to the second cause of action, admitting in the first count the execution of the note sued on, but denying that the same was due at the time suit was instituted, and alleging conditions upon which the note was due and payable.    In the second count the defendant admitted the execution of the contract, but denied that there was any breach thereof.    Afterwards on the 28th day of November, 1892, the first cause of action was dismissed by stipulation of plaintiff and defendant.    On the 29th day of November, 1892, the defendant filed his

amended answer to the second cause of action, denying that the plaintiff had been injured in any sum, and denying further any breach of the conditions of the obligation.   The amended answers reads as follows:

"Comes now the defendant and for his amended answer to plaintiff's second cause of action herein alleges :

"Paragraph First : Defendant for his second and further answer to plaintiff's complaint as set out in his second cause of action, says : He admits the execution and delivery of the paper sued on, but denies that the condition in said writing has been broken by him, and alleges that said contract was made between plaintiff and defendant, and that said writing was made and delivered to said plaintiff with the understanding between plaintiff and defendant that the same was given for the sole and only purpose of compelling defendant to use and occupy said tract of land as a place for residence and for that purpose to erect a dwelling house thereon within a reasonable time, of the value of no less than $1,500, that for the purpose of carrying out these conditions this defendant did commence the construction of a dwelling, the ultimate cost of which was largely in excess of said sum of $1,500, and on the 1st day of· February, 1892, had on said tract of land, a partially completed dwelling house for his personal use as a residence, and then of the value of about $4,000, but which was, when finished, to be at a cost of about $10,000.

"Defendant denies that the plaintiff on account of the premises has been injured in the sum sued for or in any other sum, and that he is entitled to recover anything on account of his second cause of action.

"Wherefore defendant having fully answered, he prays that this cause be dismissed and that he have judgment for his costs herein expended, and for such other relief as in equity and good conscience he may be entitled."

On the 29th day of November the plaintiff filed his demurrer to the amended answer of the defendant which was overruled by the court, and the case tried

without the intervention of a jury, on the issues thus joined, and the court rendered judgment for the plaintiff for the sum of $312 and interest and costs, and the case was then appealed to the district court of Kingfisher county. On October 26, 1893, a jury was waived and the cause tried by the court, the evidence introduced and the judgment of the lower court reversed. Motion for a new trial was overruled, and the case is now before this court on error.

*Hobbs & Kane,* for plaintiff in error.

*Roberts & Brownlee,* for defendant in error.

### OPINION OF THE COURT.

The opinion of the court was delivered by

SCOTT, J.: The written instrument sued on in this case is a bond or obligation dated July 28, 1891. In the first clause of the instrument the obligor binds himself in terms to pay the sum of three hundred and twelve dollars and fifty cents. The condition of the bond is, that if the obligor shall build, erect and complete a residence house on his certain land bought from the obligee, in the time (by February 1, 1892,) and at the cost ($1,500) aforesaid, "then this obligation to be null and void, otherwise to remain in full force."

And the defendant answers that he forthwith commenced the construction of the said dwelling house, on the said land, the cost of which on February 1, 1892, although but partially finished, was largely in excess of $1,500, to-wit: $4,000, the ultimate cost to be $10,000. It appears from the evidence that the house was completed during the spring before the suit was brought, on the 24th day of September, 1893. There is no allegation of damage in plaintiff's complaint, or

any injury or damage attempted to be proven in the evidence.

If this suit had been brought prior to the time of Sir Thomas Moore. in the reign of Henry VII., there is but little question what would be the fate of the defendant in this case.   No defense would avail him but a release under seal, as the original bond must then have been under seal which alone implies consideration.   In vain he might have protested the failure of plaintiff to allege or prove specific breaches. or damages, or have asserted the doctrine that time is not the essence of the contract, or invoke the equitable principle now well established in relation to penalties and forfeitures.   These humane meliorations of the severity of the common law, were then unknown, and now they mark the gradual development of law as a moral science from the early barbarous technical practices of pristine jurisprudence, to the broader, more discriminating and substantial requirements of modern conception of justice.   In vain might the distinguished defendant have been pointed to the pandects of Justinian, and discovered there the rich treasures of legal lore and practical moral value, to which the equity jurisprudence of our own age is so much indebted, for he would have received the same answer that Sir Thomas Moore did from the judges whom he then unsuccessfully attempted to persuade "we cannot relieve against the penalty".

Mr. Story says: in relation to penalties and forfeitures, "the general principle now adopted is, that whenever a penalty is inserted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principal intent of the instrument, and the penalty is deemed only accessory, and therefore as intended only to secure the due performance thereof, or the damage really incurred by the non-performance.   *   *   *   If the penalty is to

secure the performance of some collateral act or undertaking, then courts of equity will retain the bill and direct an issue of *quantum damnificatus;* and where the amount of damages is ascertained by a jury, upon the trial of such an issue they will *grant relief upon payment of such* damages." ( 2 Story Juris. § 1314.) The same great jurist further says that the' "true foundation of the relief in equity in all these cases, is that as the penalty is designed as a mere security, if the party obtains his money, or his damages, he gets all that he expected, and all that in justice he is entitled to." (Id. § 1316.)

Applying these principles to the case before us, and treating the penalty of the bond as a security for the performance of defendant's undertaking to complete a house by a given date, it certainly should appear where the plaintiff has sustained damages by failure on the part of the obligor to complete the house, for which the penalty in the bond stands as security only. Now, if there is no damage, there is no more reason for enforcing the penalty than for foreclosing a mortgage when the debt is already paid. The principal thing is the debt or damage, the security is collateral; and when the first is extinguished or does not come into existence, the collateral incident is affected in like manner. In order for plaintiff to avail himself of the security of the penalty, it must appear that he has sustained damages by the non-performance of defendant's undertaking, and the extent of such damage should appear. One party is not entitled to prosecute another in a court of justice for the redress of a wrong which does not exist. Where there is no actual damage shown, see *Wilcus v. King,* 87 Ill. 107.

It has become a settled rule that no other sum can be recovered under a penalty, than that which shall compensate the plaintiff for his actual loss. (1 Sedgw. Damages, 8th Ed. § 393.)

The subject has also been considered by the supreme. court of the United States. A written contract was entered into by which the defendants in error, T. and S. Sandiford, agreed to build for the plaintiff, three houses on Pennsylvania avenue in Washington City. A subsequent contract, under seal, was entered into between the same parties for the building of three additional houses, "the said houses to be completely finished on or before the 24th day of December next, under a penalty of one thousand dollars in. case of failure." The three houses were not finished at the day. The plaintiff in error retained the sum of $1,000 as stipulated damages out of the money due defendants in error. The suit was brought, and on the trial the plaintiff in error, (the defendant below), offered to set off the $1,000 as stipulated damages, which was not allowed, and the supreme court held the charge on this point right, though a new trial was ordered on other grounds. Marshall, C. J., said: "In general, a sum of money in gross to be paid for the non-performance of an agreement is considered as a penalty. It will not, of course, be considered as liquidated damages. Much stronger is the inference in favor of its being a penalty, when it is expressly reserved as one. The parties themselves denominate it a penalty and it would require very strong evidence to authorize the court to say that their own words do not express their own intention." (*Taylor v. Sandiford*, 7 Wheat. 13.)

In view of the law now applicable to this case, it is obvious enough that the plaintiff having suffered no injury, is not entitled to recover, and the judgment of the court below is hereby confirmed in all things, and the cause remanded to the lower court for appropriate action.

By the Court: It is so ordered.

Burford, J., having presided in the court below, not sitting: all the other Justices concurring.