# GANN v. BALL.

### No. 924.  Opinion Filed March 8, 1910.

1.  **CONTRACTS—Breach—Evidence — Admissibility.** B obligated himself to file upon his surplus allotment at the Chickasaw Land Office after his approval by the Secretary of the Interior as a citizen by marriage of the Chickasaw Nation, within a reasonable time after receiving a certain notice from G designating the land, and, having gone to such land office for such purpose, failed to file at said time, but returning in fifteen days, offered to do so, G then declining for such filing to be made. **Held,** that it was competent for B to state that he was not permitted to file on his surplus allotment on the first visit, he not having made his homestead filing on the ground that he did not have with him the conveyances evidencing his right to the possession of the improvements located on the land he desired to file his homestead on, in order for the jury to determine under proper instructions whether he was in default in complying with the terms of his contract.

2.  **SAME.** B having been told by an officer in the land office that he would not be permitted to make the filing on his surplus allotment on the ground that the rules and regulations of such department required the selection of the homestead allotment

first, such statement immediately thereafter being communicated by B to G, **held,** this evidence was competent for the consideration of the jury in determining whether or not B within a reasonable time offered to comply with and would have complied with his agreement, had he been permitted to do so.

3. **DAMAGES—Liquidated Damages—Issues and Proof.** Under the laws in force in the Indian Territory prior to the erection of the state, B having agreed to file on his surplus allotment within a certain time after his approval by the Secretary of the Interior as a citizen by marriage of the Chickasaw Nation, and to convey the same to G who was then and there to pay B as a consideration therefor the sum of two thousand dollars, it being stipulated that in the event that either party defaulted the other should pay or forfeit the sum of $500 as stipulated or liquidated damages, **held,** that such sum as liquidated damages could be recovered on such an agreement without alleging and proving the actual damages sustained.

4. **APPEAL—Review of Conflicting Evidence.** Where there is evidence reasonably tending to sustain the issues on the part of the plaintiff, and the evidence on the part of the defendant conflicts therewith, the determination thereof is for the jury.

5. **APPEAL—Instructions—Review—Necessity of Exceptions.** The giving or refusing of instructions by the trial court, no exceptions to the action of the court being saved, will not be reviewed here.

6. **APPEAL—Argument of Counsel—Review—Necessity of Exceptions.** Before the argument of the counsel in the trial court can be reviewed here, timely and proper objection, with exception to the action of the court thereon, must be made and preserved either by bill of exceptions or case-made.

(Syllabus by the Court.)

*Error from the United States Court for the Southern District of the Indian Territory, at Ryan; J. T. Dickerson, Judge.*

Action by M. F. Ball against W. N. Gann. Judgment for plaintiff, and defendant brings error. Affirmed.

*E. E. Morris* and *J. H. Harper,* for plaintiff in error.

*Gilbert & Bond,* for defendant in error.—On question of time of performance of contracts: *Hart v. Bullion,* 48 Texas, 278; *Watts v. Sheppard,* 2 Ala. 425; *Lindsey v. Police Jury,* 16 La. Ann. 389; *Scully v. Hamilton,* 19 Ill. App. 286.

WILLIAMS, J.   The first assignment of error relates to plaintiff's being permitted to testify that he was prevented from filing on the land selected for such purpose for him by defendant under the terms of the contract on account of the rules and regulations of the land office requiring him to file on his homestead allotment before filing on his surplus allotment.   In this we do not think that the court erred, although the plaintiff admitted that he heard that such rule obtained in the land office before attempting to file.   For he further testified that he, at such time, intended to file on his homestead, not being permitted to do so, because not having with him the proper paper title evidencing his possessory right, and not knowing until his arrival at the land office that it would be necessary to have such evidence of title in order to file. This evidence was competent for the reason that; under the terms of the contract, he was required, after being advised by the defendant of the description of the land, to file on his surplus allotment within a reasonable time, acting in good faith.   Such evidence was competent for the consideration of the jury in determining whether or not plaintiff within a reasonable time, after being notified by the defendant, in good faith offered to file on said lands, and would have filed on said land had he been so·permitted by the defendant.   *Kempner v. Cohn,* 47 Ark. 519, 1 S. W. 869, 58 Am. Rep. 775; *Bowen v. Detroit City Ry. Co.,* 54 Mich. 496, 501, 20 N. W. 559, 562, 52 Am. Rep. 822.

The second assignment related to the plaintiff being permitted to state that he did not file on the land selected by the defendant on the first visit, after such notice from defendant, made by him to said land office, because he was told by an officer in charge of the land office that the rules and regulations thereof required him to file on his homestead before filing on his surplus allotment. When a party is required to act within a reasonable time, and in attempting to so act and file in the land department on certain land he is not permitted to do so, and the statement is made to him at the time by an officer therein that he is not permitted to make such filing because the rules and regulations of such depart-

ment require that he select his homestead first, and it further appears on the part of such party that such statement as was made by the officers of the land department was by such party communicated to the opposite party in interest, who made no objection then to his filing at a later date, this evidence seems to be competent to throw light on the acts of the plaintiff in determining whether or not in good faith, within a reasonable time, he offered to and would have complied with this contract. This assignment does not seem to present any prejudicial error.

As to the third assignment, that the court erred in not directing a verdict in favor of the defendant on its motion, the contract stipulates:

"That in consideration of the sum of two thousand dollars to be paid by W. N. Gann to M. F. Ball as hereinafter stated, M. F. Ball, a citizen of the Indian Territory (Chickasaw Nation) now approved by the Dawes Commission but not yet approved by the Secretary of the Interior, hereby agrees that as soon as he has been approved of as a citizen of the Indian Territory (Chickasaw Nation) by the Secretary of the Interior, to file on 100 acres of land in the Indian Territory (Chickasaw Nation) said lands to be filed on as his surplus and it is fully agreed that M. F. Ball is to file on any one hundred acres of unallotted lands in the Chickasaw Nation that W. N. Gann may select and it is further agreed by M. F. Ball that as soon as the filing is made to execute a deed to said land to W. N. Gann and upon delivery of the same W. N. Gann hereby agrees to pay to M. F. Ball the sum of two thousand dollars in cash.

"For the faithful performance of this obligation we have each deposited with the First National Bank of Ryan $500; this money in case of forfeiture on the part of either to be paid to the party making good his contract, it is understood, however, that the trade depends upon the approval of M. F. Ball as a citizen of the Indian Territory (Chickasaw Nation), by the Secretary of the Interior.

"We, M. F. Ball and W. N. Gann, hereby authorize the First National Bank of Ryan to pay the forfeit money according to this contract."

This action arose and was tried in the lower court and appealed to the United States Court of Appeals of the Indian Ter-

ritory prior to the erection of the state, where it was pending at the time of the erection of the state, and secs. 1125, 1126, and 1127 of the Comp. Laws of Oklahoma 1909, providing that penalities imposed by contract for non-performance thereof are void with the exception that bonds or obligations penal in form, theretofore commonly in use, are not rendered void, the penalty clause therein merely being rejected, and that every contract by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, determined in anticipation thereof, is to that extent void, except that the parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damages sustained by a breach thereof when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage, do not apply.

Section 566, ch. 20, Mans. Dig. (sec. 465q, Ind. Ter. St. 1899) provides:

"The common law of England, so far as the same is applicable and of a general nature, and all statutes of the British parliament in aid of or to supply the defect of the common law made prior to the fourth year of James the First (that are applicable to our own form of Government), of a general nature and not local to that kingdom, and not inconsistent with the Constitution and laws of the United States or the Constitution and laws of this state, shall be the rule of decision in this state unless altered or repealed by the general assembly of this state."

By act of Congress of May 2, 1890, this section was extended in force in the Indian Territory and applies to the contract in question.

The question might arise as to whether or not the prior construction of the Supreme Court of Arkansas of the common law in force in said state did not become a part of such law as it was extended to the Indian Territory. This is the undoubted rule as applied to the statutory law of Arkansas thus extended. *National Live Stock Com. Co. et al. v. Taliaferro et al.,* 20 Okla. 177; *C., O. & G. R. Co. v. Burgess et al.,* 21 Okla. 653; *Moore v. Adams et al.* (reported in this volume) 108 Pac. 392. However, for the purpose of this case, it is not essential to determine that question.

for the Arkansas decisions thereon seem to be in accordance with the great weight of American authority.

In *Williams v. Green,* 14 Ark. 315, the court said:

" *   *   * Whether the parties will be allowed to stipulate for damages, where the nature of the act to be done or omitted, the damages are uncertain, though not in their nature wholly uncertain or even difficult of ascertainment or approximation; such as executory contracts for the sale or lease of realty, or to deliver chattels. The difficulty arises out of those cases where the courts have undertaken to judge of the contract, whether the sum stipulated be reasonable or unreasonable for the parties to have agreed to, and presume their intention to have been accordingly.   *   *   *

"Our impression is, that wherever the act to be done or abstained from is other than the payment of money, the circumstance that the actual damages may be more or less easily susceptible of ascertainment, ought not to influence the construction of an agreement to be one way or the other a stipulation for damages, or merely by way of penalty. Where the damages are at all uncertain or unliquidated, the parties ought to be allowed to anticipate and stipulate them if they choose to do so. Whenever courts attempt to take a distinction among contracts of this class, where no uniform or intelligible rule can be laid down to govern the distinction, they not only assume a most vexatious jurisdiction to reform the contracts of weak or sanguine men, but it tends to impair the confidence which all men ought to have in the obligation of contracts.

"The strong desire of mankind to be permitted to act as free agents rebelled against the course of decision which disarmed a penalty of its terror, and as it ceased to afford a security for the performance of a contract, they resorted to agreements for stipulated damages, which, under the idea of a compensation, grew up to be recognized as legitimate. The truth is, the real object of every stipulation for consequential damages is to secure the performance of the contract itself, and but for the confusion of terms it would be proper to say that covenants to pay a certain amount of damages for the breach of any undertaking have, to the extent that they are allowable, taken the place of penalties, the only broad distinction being, and which prevails in chancery as at law, between penalties or forfeitures for the nonpayment of money, and those which are incurred by the failure to perform any other collateral act.

"Upon the case presented by the record here for adjudication, our conclusion, but with some hesitation, is that according to any fair construction of the instrument sued upon, and in view of the rules of interpretation furnished by the decisions to which we have adverted, the plaintiff is entitled to recover the sum of five hundred dollars as stipulated damages. The word 'forfeiture,' in the connection where it is used, obviously means a failure to comply with the agreement. It is true the parties have not used the term, stipulated or liquidated damages, expressive of a clear intention to negative the idea of a penalty, but on the other hand, the instrument has not the form of a penal bond where the sum specified would exceed, being usually double the amount or value of the subject to which the contract related, and on the whole, we think these parties intended that the sum of five hundred dollars was to be paid by either party to the other, as an agreed compensation for such damages as would result from a refusal to comply with the trade."

*Williams v. Green, supra,* was upon an article of agreement entered into between the parties thereto on the 6th day of October, 1852, for the sale of a tract of land and improvements; the substance of the agreement being that Williams had traded and bargained to Green a certain tract of land, containing forty-five acres more or less, the price to be thirty dollars per acre for the land with the addition of the value of the improvement upon it, such valuation to be made by two persons named in the article, and for which payment was to be made in goods of Green, then in store, consisting of groceries, hardware, etc., at the original cost, with the addition of freight on certain of the articles, and the balance of the payment for the land to be made in good mules at cash valuation. The agreement concludes as follows:

"In witness of the above trade we hereby set out hands and seals, and on forfeiture of complying with it on the part of either Green or Williams, we hereby bind ourselves, our heirs, etc., in the sum of five hundred dollars to be well and truly paid. In testimony whereof," etc.

The parties in the lower court tried the case upon the theory that it was a contract for liquidated damages. The same is briefed on that theory in this court.

In *District of Columbia v. Gallaher et al.,* 124 U. S. 505, 31 L. Ed. 526, 8 Sup. Ct. 585, Mr. Justice Matthews, speaking for the Supreme Court of the United States, says:

"We think that the practical construction which the parties put upon the terms of their own contract, and according to which the work was done, must prevail over the literal meaning of the contract. * * * "

In *The City of Chicago vs. Sheldon,* 76 U. S. 50, (9 Wall.) 19 L. Ed. 594, the court said:

"In cases where the language used by the parties to the contract is indefinite or ambiguous and, hence, of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence. The interest of each, generally, leads him to a construction most favorable to himself, and when the difference has become serious, and beyond amicable adjustment, it can be settled only by the arbitrament of the law. But, in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one."

In *Topliff v. Topliff,* 122 U. S. 121, 30 L. Ed. 1110, 7 Sup. Ct. 1057, this excerpt is quoted with approval.

See, also, *Cavazos v. Trevino,* 6 Wall. 773, 18 L. Ed. 315; *Chicago Great Wes. R. Co. v. Northern Pac. R. Co.,* 101 Fed. 795, 42 C. C. A. 25; *Gould v. Boston Excelsior Co.,* 91 Me. 214.

*Kelly v. Seay,* 3 Okla. 527, 41 Pac. 615, even though it be conceded that it conflicts with the Arkansas case, would not be a controlling authority here, as the case at bar arose in the Indian Territory prior to the erection of the state. That case merely holds that in an action instituted for a penalty recovery could be had only for the damages actually sustained. In this case the action is for stipulated or liquidated damages. The case of the *District of Columbia v. Gallaher, supra,* as well as *Kelly v. Seay, supra,* and the other cases cited, are authority for the proposition that the practical construction placed upon the contract by the parties thereto is entitled to great, if not controlling, influence. And if the contract in the case at bar was for stipulated or liqui-

dated damages, there is nothing in the case of *Kelly v. Seay* precluding a recovery for a stipulated amount. When we consider the language of the contract in the light of the practical construction of the parties thereto, we are not permitted to hold that the trial court erred in construing the contract to be one for liquidated or stipulated damages and not for a penalty.

As to whether plaintiff complied with the terms of said contract, there was a conflict in the evidence. This court has repeatedly held that under such circumstances such determination is solely for the jury.

As to the fourth, fifth, sixth and seventh assignments of error, relating to the instructions of the court, we have carefully read said instructions, but are not permitted to review same. The instructions, under the rule obtaining in the Indian Territory, are a part of the record only when made so by bill of exceptions. No exceptions seem to have been saved to the instructions complained of. It has been settled by this court, as well as the United States Court of Appeals of the Indian Territory, that as a rule, where no exceptions to the instructions of the lower court are made and preserved as a part of the record, the action of the trial court relative thereto will not be reviewed. *Territory v. Choctaw, O. & W. R. Co.,* 20 Okla. 663.

The eighth assignment of error relates to the alleged remarks of counsel in the closing argument, but the record does not disclose that any proper objection or exception was preserved thereto. Under the former rulings of this court, as well as the United States Court of Appeals for the Indian Territory, such must be called to the attention of the court in apt time and his ruling had thereon and properly made a part of the record in order for the same to be reviewed here. *Kaufman v. Boismier,* 25 Okla. 252, 105 Pac. 326; *Coalgate Company et al. v. Bross,* 25 Okla. 244, 107 Pac. 425.

The judgment of the lower court is affirmed.

All the Justices concur.