WILLIAM HAFFKE ET AL., APPELLEES, V. H. J. COFFIN ET
AL., APPELLANTS.

FILED APRIL 24, 1911. No. 16,383.

1. **Damages: PENALTY.** Ordinarily a sum of money in gross, to be paid for the nonperformance of an agreement, is considered as a penalty, the legal operation whereof is to cover the damages which the party, in whose favor the stipulation is made, may sustain from a breach of the contract by the opposite party.

2. **Indemnity Bond: BREACH: PLEADING AND PROOF.** In an action upon a bond of indemnity, it is incumbent upon the plaintiff to plead and prove, not only a breach of the contract, but the amount of damages he has sustained thereby.

3. **Estoppel: RECITALS IN BOND.** A recital in a bond, given to secure the performance of an antecedent contract for the exchange of real estate for personal property, that the chattels are of the agreed and stipulated value of $4,500, is not contractual in its nature, and does not estop either party from proving the actual value.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Reversed.*

*E. J. Clements* and *C. E. Foster,* for appellants.

*C. E. Herring* and *C. Haffke, contra.*

ROOT, J.

In December, 1907, the plaintiffs entered into a written contract to transfer "their livery and hack business located in the city of Omaha," to W. P. Thorp and Charles I. Bragg for the consideration of two quarter sections of land in Loup county. Thorp and Bragg were to convey this land to the plaintiffs, and were also to furnish "a merchantable abstract" of title; the title deeds were to be placed in escrow "until the abstract is approved by the parties of the first part."

The plaintiffs delivered their chattels to the defendant H. J. Coffin, who was interested in the transaction. They

approved the abstract of title and accepted the deed for one quarter section of land, but did not approve the abstract of title or accept the deed for the other tract. Thereupon in January, 1908, the defendants executed and delivered to the plaintiffs the bond in suit, which is as follows: "Know All Men by These Presents: That H. J. Coffin, as principal, and the National Fidelity & Casualty Company, as surety, are held and firmly bound unto Charles Haffke and William Haffke in the sum of two thousand five hundred dollars ($2,500) for the payment of which well and truly to be made we do bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally firmly by these presents, upon condition as follows:

"Whereas, the said H. J. Coffin has sold and agreed to convey unto said Charles Haffke and William Haffke, for the consideration of two thousand and five hundred dollars ($2,500) the following described premises, to wit: The north half of the northwest quarter of section twenty-six (26), and the north half of the northeast quarter of section twenty-seven (27), in township twenty-one (21) north of range nineteen (19) west of the sixth principal meridian, in Loup county and state of Nebraska; and the said Charles Haffke and William Haffke have purchased said premises, and have made payments therefor as follows: By delivering to said H. J. Coffin chattels and personal property of the agreed and stipulated value of four thousand five hundred dollars ($4,500), one-half of which has this day been paid.

"Therefore, the condition of this obligation is such that if the above bounden H. J. Coffin and National Fidelity & Casualty Company, of Omaha, Nebraska, will perfect the title to said premises, furnish to said Charles Haffke and William Haffke an abstract of title thereof showing a good and perfect title to said premises in the said H. J. Coffin, to be approved by Guy R. C. Read, Esquire, of Omaha, Nebraska, and will convey said premises by deed of general warranty, and clear of all incumbrances, unto the

said Charles Haffke and William Haffke on or before the first day of October, 1908, then this obligation to be void, otherwise to be and remain in full force and effect."

The plaintiffs plead a breach of the bond as follows: "That default has been made in the conditions stated in said bond and defendants have failed and neglected to perfect the title to said premises, and have failed and neglected to furnish the plaintiffs an abstract of title thereof showing a good and perfect title to said premises in the said H. J. Coffin, approved by the said Guy R. C. Read; and have failed and neglected to convey said premises by deed of general warranty, clear of all incumbrances, unto the said plaintiffs, on or before October 1, 1908." There is no allegation of the value of the tract of land, nor that the plaintiffs have been damaged, but they plead that there is due them from the defendants $2,500, for which, with interest from October 1, 1908, and costs of suit, they pray judgment.

The defendants answered, admitting the execution of the bond; alleged that the chattels transferred by the plaintiffs in consideration for the real estate were not worth to exceed $1,600; that the title to the quarter section of land which had not been accepted by the plaintiffs had been perfected according to the requisitions of the plaintiffs' counsel, but that they refused to accept the deed or the abstract. The reply traverses these allegations. The cause was tried to the court, and it found that the $2,500 mentioned in the bond was intended by the parties as liquidated damages, and gave judgment for that sum, with interest. The defendants appeal.

Although there is no specific agreement in the bond that $2,500 shall be taken and considered as the amount of damages the plaintiffs will sustain for a breach of that instrument, plaintiffs assert that the damages flowing from the defendants' failure to perfect title to the land are uncertain, and it is evident from an inspection of the undertaking that the parties thereto adjusted the question of damages, agreed upon the value of the land in ad-

vance of the sale, made that value of the essence of the contract, and are estopped to controvert that fact, but have irrevocably elected to pay $2,500 in lieu of transferring title to the land. The contract to trade contains no stipulation as to the value of either tract of land or of the plaintiffs' personal property so that an agreed valuation for the property to be exchanged was not an inducing cause or consideration for this contract. The bond evidently was not within the contemplation of the parties at the time the contract to trade was entered into. Subsequent developments probably suggested the necessity for some security, other than the personal responsibility of Thorp and Bragg, that the title to the quarter section of land which the plaintiffs did not accept should be perfected, and the bond in suit was given to the end that the defendant Coffin might perfect that title and the chattels might be delivered.

There is no specific agreement in this bond that $2,500, or any other sum, is agreed to as liquidated damages, or that if the title is not perfected, or the abstract is not furnished, or the title is not conveyed, or that if there is a total failure to perform, the plaintiffs' damages shall be taken and considered to amount to $2,500, or to any other sum. There is nothing in the bond or in any evidence extrinsic thereto to suggest that the property transferred by the plaintiffs was of so unusual a character that it would be difficult to prove its value, nor is there anything in the record tending to prove that the market value of the land or the value of an abstract of title thereto cannot easily be ascertained by recourse to evidence, nor are we advised that any incumbrance that may exist upon the land or any imperfections in the title cannot be removed, or that the depreciation in value of the title by reason of their existence cannot readily be ascertained. In fact, there is neither allegation nor proof that the transaction under consideration is different, except as to the special features that might inhere in any contract to trade, from scores of contracts entered into within this state every

week in the year. In the light of these facts, should the bond be construed as an agreement to pay liquidated damages?

This subject was discussed in *Brennan v. Clark*, 29 Neb. 385, and the court, speaking through MAXWELL, J., say: "In construing a contract to determine whether or not a provision therein for the payment of a stipulated sum in case of default by one of the parties is to be considered as a penalty or liquidated damages, the court will consider the subject matter, the language employed, and the intention of the parties. If the construction is doubtful, the agreement will be considered a penalty merely. If damages result from the performance or omission of acts, which damages are certain or can be ascertained by evidence, the stipulated sum is considered as a penalty; but, where the acts or omissions occasioning damages are not susceptible of measurement by a pecuniary standard, the sum stipulated ordinarily will be regarded as liquidated damages." This case was approved and followed in *Squires v. Elwood*, 33 Neb. 126; *Gillilan v. Rollins*, 41 Neb. 540; and *Lee v. Carroll Normal School Co.*, 1 Neb. (Unof.) 681. See, also, *Davis v. Gillett*, 52 N. H. 126; *Cimarron Land Co. v. Barton*, 51 Kan. 554; *Kelley v. Seay*, 3 Okla. 527, 41 Pac. 615; and *Tayloe v. Sandiford*, 7 Wheat. (U. S.) *13.

Counsel for the plaintiffs urge that the case at bar should be ruled by *Sun Printing & Publishing Ass'n v. Moore*, 183 U. S. 642. The opinion was written by the present chief justice of that court, and contains an interesting discussion of the law. In that case the parties had agreed in the contract, which the bond was given to secure, that the value of the yacht chartered should, for the purpose of the charter, be considered and taken at the sum of $75,000, and that the vessel should be returned in good condition or paid for. The vessel was lost at sea and never returned to the owner. Mr. Justice White says that parties may contract for liquidated damages for the breach of a contract, and if the court, upon a fair

consideration of that contract, is convinced that such a stipulation was made, should enforce it.   In satisfying himself that the parties intended to so agree, the learned justice mentions as one potent fact that the yacht had no market value.   In the instant case the property to be conveyed, and the consideration therefor, had a market value, and, according to the testimony produced, the land is worth not to exceed $800.   The expense of procuring an abstract would probably not exceed $50, and it is not consonant with reason to say, in the absence of specific language to that effect, that the parties intended the defendants should pay $2,500 for the failure to perform any one or all of the conditions of this bond.

Counsel argue that there is a stipulation in the undertaking that the personal property was worth $4,500. There is a statement to this effect, but it plainly refers to a past transaction, the agreement to trade, and forms no part of the consideration for the execution of the bond, so as to estop the defendants from making proof of the fact.   *Commonwealth Mutual Fire Ins. Co. v. Hayden Bros.,* 60 Neb. 636; *Fagan v. Hook,* 134 Ia. 381.

Upon a consideration of the entire bond and the contract which it was given to secure, we are of opinion that this case should be ruled by *Brennan v. Clark, supra.*  The testimony with respect to a breach of the bond is evasive, and suggests that, although an abstract showing perfect title in the plaintiffs or their grantors was not delivered October 10, 1908, it was delivered on some other date. It may be that the plaintiffs have been damaged in the sum of $2,500, but they have neither pleaded nor proved that fact.

The judgment of the district court is therefore reversed and the cause remanded for further procedings.

REVERSED.