[Civ. No. 1322. Third Appellate District.—July 26, 1915.]

WEINREICH ESTATE COMPANY (a Corporation), Appellant, v. A. J. JOHNSTON COMPANY (a Corporation), et al., Respondents.

BOND—PERFORMANCE OF COVENANTS OF LEASE—STIPULATED PENAL SUM —PENALTY AND NOT LIQUIDATED DAMAGES.—The naming of the sum of two thousand dollars as the penal sum in a bond given to secure the payment of rent and the faithful performance of all the other covenants contained in a lease of store-premises does not make such obligation void, as providing for liquidated damages, but such sum is to be construed as a penalty to cover the actual damages sustained upon a breach of any of the covenants of the lease.

ID.—CONTRACT OF SURETYSHIP—INTERPRETATION.—In interpreting the terms of a contract of suretyship the same rules are to be observed as in case of other contracts.

APPEAL from a judgment of the Superior Court of Sacramento County. J. E. Prewett, Judge presiding.

The facts are stated in the opinion of the court.

De Ligne & Jones, for Appellant.

C. E. McLaughlin, and C. P. McLaughlin, for Respondents.

WOOD, J., *pro tem.*—Plaintiff brought this action to recover the sum of $1407.50 for rentals unpaid by the defendant, A. J. Johnston Company, upon a lease of a certain store in the city of Sacramento. McClatchy and Bontz are joined as defendants as sureties upon a bond executed by the three defendants as a consideration for the letting of said premises to the A. J. Johnston Company. They demurred to the complaint upon the general ground that it did not state facts sufficient to constitute a cause of action against them. The superior court made its order sustaining the demurrer without leave to amend the complaint, and from the judgment entered upon this order the plaintiff has appealed.

The instrument executed by defendants is therein denominated a bond. The obligatory part of it is as follows: "That A. J. Johnston Company, a corporation, as principal, and C. K. McClatchy and L. E. Bontz, as sureties, are held and

firmly bound unto Weinreich Estate Company, a corporation, in the sum of two thousand ($2,000.00) dollars, gold coin of the United States of America, to be paid to said Weinreich Estate Company, a corporation, its successors and assigns; for which payment well and truly to be made we bind ourselves and our heirs, executors and administrators, jointly and severally, firmly by these presents.''

The condition of the obligation is in substance recited to be: The execution of the lease of the store, for the term of five years commencing February 1, 1910, at a monthly rental, payable in advance, of two hundred dollars per month for the first three years, two hundred and twenty-five dollars and two hundred and fifty dollars per month for the fourth and fifth years, respectively. The concluding language of the bond is:

''Whereas, said lease contains certain other covenants and agreements on the part of said A. J. Johnston Company, a corporation, to be performed.

''Now, therefore, if said A. J. Johnston Company, a corporation, shall well and truly pay unto Weinreich Estate Company, a corporation, said rental at the times and in the amounts as in said lease provided and as hereinabove set forth and shall well and truly perform each and all of the other covenants and agreements in said lease contained, to be performed by said A. J. Johnston Company, a corporation, then the above obligation shall be null and void, otherwise to remain in full force and virtue.''

The position of appellant is that the sum of two thousand dollars mentioned is to be construed as a penalty to cover the actual damages sustained upon the breach of the condition of the bond by a failure to perform any covenant in the lease.

Respondents concede that such is the nature of the liability of sureties upon bonds to secure the faithful performance of trusts, public contracts, duties of officials and such contracts like builders' as are authorized by express provision of law. They claim, however, that as this is a mere private contract and there being no statute fixing the liability upon the bond, and as they have promised to pay the flat sum of two thousand dollars if the rent is unpaid or other covenant of the lease unperformed, the agreement is void and imposes no liability upon them because of the provisions of sections 1670 and 1671 of the Civil Code. Those sections in substance

declare that every contract is void to the extent that it determines in advance the damages, or other compensation to be paid for the breach of a covenant, unless from the nature of the case it is impracticable or extremely difficult to fix the actual damages.    Whether the stipulated sum of two thousand dollars is to be construed as a "penalty to cover the actual damages" suffered upon the breach of the condition, or as "stipulated damages" and therefore within the inhibition of the code sections mentioned is the only question argued upon this appeal.

It is sometimes said that the cardinal rule in the interpretation of a contract is to ascertain the intention of the parties.    For the purpose of ascertaining such intention there are certain established rules laid down, among which are: "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to other provisions of this title." (Civ. Code, sec. 1639.)

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."    (Civ. Code, sec. 1643.)

That legal terms are to be given their legal meaning unless obviously used in a different sense (17 Am. & Eng. Ency. of Law, 2d ed., p. 13), and the settled law of the land at the time a contract is made becomes a part of it and must be read into it.    (6 R. C. L., 243.)    Another familiar rule is that mentioned by Mr. Justice Henshaw, in *Mebius & Drescher Co.* v. *Mills,* 150 Cal., at page 236, [88 Pac. 919] : "As between two permissible constructions, that which establishes a valid contract shall be preferred to that which does not."

Having in view these rules of interpretation, what was the intention of respondents and the nature of the obligation that they undertook to assume in executing the bond, as ascertained from the complaint in this action, the allegations of which the demurrer admits to be true?

Before the time of Henry VII, the sureties, upon a bond in form like the one here involved, would be required to pay the entire sum of two thousand dollars upon the breach of the covenant to pay rent.    We learn from Sir William Blackstone's Commentaries, volume 11, chapter 20, page 30, that formerly if any condition was unperformed, the whole

penalty was recoverable at law, but that the courts of equity interposed and would not permit a man to take more than in conscience he ought, viz., his principal, interest and expenses in case the forfeiture accrued by nonpayment of money borrowed; the damages sustained, upon nonperformance of covenants and the like.    Notwithstanding the rule in equity the courts of law continued to pronounce judgment for the full amount of the penalty and, in *Bonefour* v. *Rybot,* 3 Burr, 1370, Sir Thomas More was moved to say: "It was extraordinary that after it was settled in *equity* that the forfeiture might be saved by the performing the *intent,* and this was the nature of a bond, the courts of law did not follow equity, but still continued to do *injustice as of course,* and put the parties to the delay and expense of setting it right *elsewhere as of course."*

Finally the equitable intent of the bond was established by statutes (8 and 9 Wm. III, ch. 41, sec. 8) which required the plaintiff to assign breaches of the bond, and the jury to assess the damages for such breaches as were proved at the trial.

Thus in England, where the parties originally, in the common-law form of bond did covenant to pay the whole stipulated penalty, upon the breach of any condition, the language used in this form of bond acquired a "legal meaning" at variance with its literal import, as a result of the decisions of the courts of equity and the statutes enacted.

That these bonds, couched in peculiar language to express an intent to pay actual damages only, have received the same equitable interpretation in this country is shown by a resort to the cases in which they have been the subject of litigation involving mere private contracts, and not depending upon any statute authorizing or requiring them.

In *Spencer* v. *Perry,* 18 Mich. 394, the penal sum mentioned in the bond was six thousand dollars, conditioned to pay all the debts of a certain firm.    It was sought to hold the maker for debts in excess of this amount and it was there said: "The present bond was a contract between private parties, and one chief object of putting it in the form of a bond with a penalty, must, according to the general understanding in such cases, be supposed to have been to fix the limit beyond which the liability of the defendant should not extend. . . . If the parties had intended to provide for a

liability to an indefinite extent, to be limited only by the amount of the debts of the firm, whatever they might be, the obvious mode of creating such a liability was by a covenant to that effect without a penalty, or by making the penalty of the bond so large as, in any event, to exceed the debts, as the parties probably supposed they had done here.''

In *Turck* v. *Marshall Silver Min. Co.,* 8 Colo. 113 [5 Pac. 838], in construing the liability incurred upon a bond conditioned for the reconveyance of real estate within a certain time, it is said: ''A bond is said to be *prima facie* a penal obligation, and the sum mentioned therein is not considered as liquidated damages unless other language used in the instrument or accompanying circumstances shows that such use was the intention of the contracting parties. But if the sum named was *penalty,* plaintiff was only entitled to recover such damages as he might suffer from the breach of the condition specified.''

In *Henry* v. *Davis,* 123 Mass. 345, the bond was conditional that Davis would abide by the decision of arbitrators to settle a disputed boundary line. The court, in that case, in the course of the decision, said: ''He contends that he is entitled to recover the penal sum named in the bond as liquidated damages. We are of the opinion that this claim cannot be sustained. The bond is in the usual form, in the penal sum of five hundred dollars. It contains no express agreement that the sum is to be regarded as liquidated damages, and we find nothing in the bond, or in the nature of the case, which would justify the inference of an intention that such sum should be treated as the stipulated and ascertained damages for a breach. There is nothing to take the case out of the general rule that in bonds of this form, the penal sum named in the bond is regarded as a penalty and not as liquidated damages.''

Other cases of like nature, in which the same interpretation has been given to such bonds, are: *O'Keefe* v. *Dyer,* 20 Mont. 477, [52 Pac. 196]; *Curry* v. *Larer,* 7 Pa. St. 470, [49 Am. Dec. 486]; *McIntosh* v. *Johnson,* 8 Utah, 359, [31 Pac. 450]; *Kelley* v. *Seay,* 3 Okla. 527, [41 Pac. 615]; *Dart* v. *Southwestern B. & L. Assoc.,* 99 Ga. 794, [27 S. E. 171]; *Ripley* v. *Eady & Mayfield,* 106 Ga. 422, [32 S. E. 343]; *Bresnahan* v. *Bresnahan,* 46 Wis. 385, [1 N. W. 39]; *Pollard* v. *Porter,* 3 Gray (Mass.), 312; *Smith* v. *Wainwright,* 24 Vt. 97; *Disosway* v.

*Edwards,* 134 N. C. 254, [46 S. E. 501]; *Davis* v. *Gillett,* 52 N. H. 128; *Bigony* v. *Tyson,* 75 Pa. St. 157; *Smith* v. *Wedgwood,* 74 Me. 457; *Burrill* v. *Daggett,* 77 Me. 545, [1 Atl. 677]; *Longfellow* v. *McGregor,* 56 Minn. 312, [57 N. W. 926].

In the light of the pleading before the court, to say that the sureties intended to pay the entire sum of two thousand dollars upon the default in payment of a single monthly rental of two hundred dollars is to give the bond an unreasonable construction and to violate all of the rules of interpretation mentioned. It is contrary to the meaning given to the language used in creating the obligations under such bonds, as the language is understood in the ordinary and popular sense in this state where instruments in like form have been and are now in general and extensive use to secure the performance of mere private contracts of the nature here involved, as well as official duties and various trusts.

Respondents have cited no authority and we know of none that militates against the views here expressed. Many are referred to by them in support of the rule "that a plaintiff seeking to recover a sum as stipulated damages, must also show by pleading and proof that it is a case where the parties are allowed under the code to stipulate the damages." The rule is unquestioned. They are mistaken as to the effect of *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 2, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713.] The court there decided that the vendee in default could *not* recover any part of the moneys paid by him upon a contract for the purchase of land, time being of the essence of the contract. The reasons therefore are so clearly shown that it cannot be confused with a case of this character. As to those announcing the general rule that sureties are entitled to stand upon the precise terms of their contract, they must be considered in the light of the language used by Mr. Justice Lorigan in *Sather Banking Co.* v. *Briggs Co.,* 138 Cal. 730, [73 Pac. 352], that "The old rule of *strictissimi juris* applies only to the extent that no implication shall be indulged in to impose a burden not clearly inferable from the language of the contract, but does not apply so as to hold that the contract shall not be reasonably interpreted as other contracts are." In interpreting the terms of a contract of suretyship, the same rules are

to be observed as in case of other contracts. (Civ. Code, sec. 2837.)

*Los Angeles O. G. Assoc.* v. *Pacific Surety Co.*, 24 Cal. App. 98, [140 Pac. 295], is cited to the effect that sections 1670 and 1671 of the Civil Code, have *modified* the rules for ascertaining whether a contract provides for "liquidated damages" or for a "penalty" covering the actual damages. While there may be some language to that general effect used in the opinion, what the court there determined was: That where the pleading alleged facts showing that the covenant broken was of such a nature that the parties were entitled to fix the damages in advance and in fact had done so, merely because the pleading disclosed that the same stipulated sum was to be paid upon a violation of other covenants of different degree of importance, would not necessarily preclude the plaintiff from a recovery of the stipulated sum as liquidated damages. Moreover, the court there held that even conceding the provision of the contract to be void, there was a sufficient allegation elsewhere in the complaint to entitle plaintiff to his actual damages from the surety.

Respondents concede that, under the old equity rule, plaintiff is entitled to recover, were it not for the enactment of the two sections of the Civil Code mentioned. These sections announced no new principles of law in this state. Indeed, more than ten years prior to their enactment, in *Streeter* v. *Rush*, 25 Cal. 68, wherein was involved the legality of a covenant for liquidated damages in a bill of sale whereby Streeter bound himself in the sum of five hundred dollars not to go into the butchering business in Suisun without the consent of Rush, it was determined that the covenant for the liquidated damages was valid because the damages for the breach were uncertain and a matter of *mere conjecture.* The justice who dissented was of the opinion that, under the authorities cited, the sum mentioned should be construed as a penalty to cover the actual damages, because it was not expressly stipulated in the instrument that the sum was *liquidated damages and not a penal sum.* The code sections were intended to secure a just compensation for injuries, when they could be readily ascertained, and to protect parties in those cases from improvident contracts. They were not intended, nor is it the policy of the law, to force a construction of a contract that will assign it to the prohibited class and thereby

deprive a party of the benefit of an agreement he has taken to secure him against loss of rents to accrue from his tenant.

Respondents place principal reliance upon *Jack* v. *Sinsheimer,* 125 Cal. 565, [58 Pac. 130]. The obligation there was not in form of a bond. Sinsheimer made an indorsement upon a lease; that for the purpose of securing the penalty of one thousand dollars, in the lease provided, he guaranteed the payment of the same unto Truman Andrews whenever, at any time during the term therein limited, Cheda should be legally evicted from the premises for nonpayment of rent stipulated, or whenever he voluntarily vacated the same, upon ten days' notice. The lease contained a covenant, that upon Cheda's failure to pay the rent, he was to vacate the premises upon receiving 30 days' notice from Andrews, and pay to him the sum of one thousand dollars as *settled and liquidated damages.* It is true that the commissioner who wrote the opinion said: "We think, under the provisions of the code quoted, that clause of the lease as to the penalty of one thousand dollars is void." It is obvious, however, that he was using the word "penalty" in the sense that it was used in the guaranty, which was a part of the lease, and in response to one of the claims made, that payment of the one thousand dollars should be enforced in the nature of a forfeiture. Furthermore, eliminating the void covenant in the lease, it is shown in the opinion that the pleading alleged no actual damages suffered by any one, neither did it show that Cheda *was legally evicted during the term* or that he *voluntarily vacated the premises,* which were the only conditions under which Shinsheimer guaranteed the payment of one thousand dollars.

We think that it appears from the complaint that respondents obligated themselves to pay the actual damages suffered and not the entire sum of two thousand dollars, upon the breach of any covenant in the lease.

The judgment is reversed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 23, 1915.