[Civ. No. 24822. Second Dist., Div. Two. Mar. 23, 1961.]

ANDREW L. MAHONEY, Respondent, v. FOUNDERS' INSURANCE COMPANY (a Corporation), Appellant.

Milton Wichner for Appellant.

Harold Lee Henrikson for Respondent.

FOX, P. J.—This is an action by plaintiff, as obligee of a bond, to recover damages from defendant, as surety on the bond, since the principal obligor, Roark, had failed to perform.

Defendant, Founders' Insurance Company, filed a cross-complaint against plaintiff Mahoney, Roark, and others for damages on the ground of asserted fraud via concealment of certain facts on the part of cross-defendants. After all the evidence had been presented on the question of "concealment" and the court had determined that issue, Founders dismissed the cross-complaint as to all cross-defendants except Roark. Plaintiff recovered a judgment against Founders for $15,600, and a judgment, in a like amount, was rendered in favor of Founders (cross-complainant) against Roark as cross-defendant. Founders has appealed from the judgment against it.

The bond on which plaintiff sued was entitled "Indemnity Bond" but in the body of the instrument Founders is referred to as "Surety." It is in the "penal" sum of $30,000.

The two following paragraphs of the bond are significant:

"WHEREAS, the Obligee [plaintiff] has agreed to advance certain sums of money to the Principal [Roark] to be used for the purpose of activating certain copper mining properties in Mineral County, Nevada, and in consideration therefor, the Principal [Roark] has agreed to ship six thousand (6000) tons of copper-bearing ores to American Smelting & Refining Company or other licensed smelter or refiner, the proceeds from which are intended to reimburse said Obligee [plaintiff] for the above advance.

"Now, THEREFORE, if said Principal [Roark], or his agents, shall mine, haul and load aboard cars of Southern Pacific Railroad, Mina, Nevada, six thousand (6000) tons of copper-bearing ores or concentrates to said American Smelting & Refining Co., Inc. at Garfield, Utah, or other licensed smelter or refiner, within a period of not to exceed one (1) year from the date hereof, and if said Principal [Roark] shall direct that said smelter or refiner shall direct to the Obligee [plaintiff] payment of Five ($5.00) Dollars per ton of raw ore or thirty-three and one-third percent (33⅓%) of the net smelter returns after royalties from sale of concentrates, then this obligation shall be void, otherwise to remain in full force and effect."

Actually, plaintiff did not agree to advance funds to Roark

to activate these copper mining properties. The deal between plaintiff and Roark was that plaintiff agreed to sell Roark seven specified race horses and Roark was to convey 6,000 tons of ore from the Dunlap Mine at Mina, Mineral County, Nevada, and further agreed to mine and ship the ore for the benefit of plaintiff, guaranteeing plaintiff a return of not less than $5.00 per ton. Roark also agreed to furnish plaintiff a bond "guaranteeing delivery of 6000 tons of ore within two years."[1] This is the underlying agreement which gave rise to the bond here sued upon. Founders did not inquire of plaintiff regarding the nature of the deal, and plaintiff did not tell Founders what it was. There appears to have been no communication at all between plaintiff and Founders.

Roark failed to perform, consequently plaintiff sued Founders on its bond. The time for Roark's performance, as set forth in the bond, had expired.

Plaintiff proceeded at the trial as if he were entitled to $30,000, the face amount of the bond. His theory was that Roark's obligation underlying the bond was not only to see that the profits were paid to plaintiff by the smelter but also to guarantee plaintiff $5.00 per ton or $30,000. The court found that plaintiff was not entitled to Roark's guarantee and required plaintiff to prove "actual damages," or what the returns to him would have been had Roark conducted mining operations as agreed during the period for performance specified in the bond, *i.e.*, the year following January 3, 1957.

To establish his prima facie case exclusive of the question of damages plaintiff read into evidence a deposition of cross-defendant Roark and admissions of defendant Founders. Defendant contends that the trial court was in error in permitting the deposition of Roark, who was present at the trial, to be read into evidence. Section 2016, subdivision (d) of the Code of Civil Procedure provides, in part, that "At the trial . . ., any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present . . . at the taking of the deposition . . ., in accordance with any one of the following provisions: . . . (2) The deposition of a party to the record . . . may be used by an adverse party for any purpose." Defendant points out that Roark is merely a co-cross-defendant, and as such is not an "adverse party" in relation to Mahoney. Defendant concludes that therefore Roark's deposition was not admissible under section 2016, subdivision (d) (2).

[1]The bond specified one year as the period of performance.

However, in drawing this conclusion, defendant overlooks the effect of section 1851, Code of Civil Procedure, which states: "And where the question in dispute between the parties is the obligation or duty of a third person, whatever would be the evidence for or against such person is prima facie evidence between the parties." It is clear that this section applies to actions against a surety where the question in dispute is the obligation or duty of the principal. (*Standard Oil Co.* v. *Houser,* 101 Cal.App.2d 480 [225 P.2d 539]; *Piggly Wiggly Yuma Co.* v. *New York Indem. Co.,* 116 Cal.App. 541 [3 P.2d 15].) With respect to admissions of the principal, Professor Wigmore in his treatise on Evidence says: "So far as one person is privy in obligation with another, i.e., is liable to be affected in his obligation under the substantive law by the acts of the other, there is equal reason for receiving against him such admissions of the other as furnish evidence of the act which charges them equally. . . . When does this privity or identity of obligation exist? . . . It is enough to note that the principle finds constant application chiefly to the admissions of a *co-promissor,* of a *principal* (against his surety), and of one or two other classes of liability." (Emphasis added.) Viewed in the light of section 1851 the question becomes whether Roark's deposition would be admissible against him at the instance of Mahoney in an action brought against him by Mahoney. There is no question but that in such an action Mahoney would be an adverse party in relation to Roark, for adverse parties are those who, by the pleadings, are arrayed on opposite sides. (*Gish Realty Co.* v. *Central City* (Ky. App.), 260 S.W.2d 946, 951.) Since the deposition "would be the evidence . . . against" Roark under section 2016, subdivision (d) (2) it is "prima facie evidence between the parties" herein under section 1851.

Defendant argues that the findings and judgment are based upon remote, contingent, speculative, and uncertain damages, and are therefore invalid. Its first contention is that the finding as to damages was based on the anticipated profits of an untried, speculative enterprise, and must *ipso facto* be without evidentiary support. It cites *Lacy Mfg. Co.* v. *Gold Crown Mining Co.,* 52 Cal.App.2d 568 [126 P.2d 644]; *Handley* v. *Guasco,* 165 Cal.App.2d 703 [332 P.2d 354]; *California P. Mfg. Co.* v. *Stafford P. Co.,* 192 Cal. 479 [221 P. 345, 32 A.L.R. 114]. The California case states the rule as follows (p. 485): "As a proposition of law, it is well established that loss of profits growing out of a breach of contract,

and resulting to an unestablished business, is of too uncertain a character to constitute a basis for the computation of damages for the breach. [Citation.] ▮▮ Where a new business or enterprise is engaged in, and damages by way of profits are sought for its interruption or prevention, the rule is that they will be denied, for the reason that such business is an adventure as distinguished from an established business, and its profits are speculative and remote, existing only in anticipation.''

Clearly if the business is a new one there can be no past profits on which to base an estimate of future profits, and if there is no other satisfactory way to do it, damages based on anticipated profits cannot be demonstrated. ▮▮ ''But this rule is not an end in itself, merely an aid to determination of whether the fact of damage, as distinguished from the amount of damage, has been established with reasonable certainty. The court added in the Grupe opinion [*Grupe* v. *Glick,* 26 Cal.2d 680, 692] at page 693 [160 P.2d 832] : 'But although generally objectionable for the reason that their estimation is conjectural and speculative, anticipated profits dependent upon future events are allowed where their nature and occurrence can be shown by evidence of reasonable reliability. [Citations.] All of these cases recognize and apply the general principle that damages for the loss of prospective profits are recoverable where the evidence makes reasonably certain their occurrence and extent.' '' (*Edwards* v. *Container Kraft Carton etc. Co.,* 161 Cal.App.2d 752, 759 [327 P.2d 622].) ▮▮ Furthermore, probable profits lost through breach of contract may be estimated, ''and an award of damages for loss of prospective profits will be sustained if there is a satisfactory basis for estimating the probable earnings that would have been received if the contract had been performed.'' (*Mann* v. *Jackson,* 141 Cal.App.2d 6, 12 [296 P.2d 120].)

The question remains whether there was a satisfactory basis. Absolute certainty is not required. ▮▮ Where the promisor, by his wilful breach of contract, has given rise to the difficulty of proving the amount of loss of profits, it is proper to require of the promisee only that he show the amount of damages with reasonable certainty, and to resolve uncertainties against the promisor. (*Steelduct Co.* v. *Henger-Seltzer Co.,* 26 Cal.2d 634 [160 P.2d 804] ; *King* v. *Gerold,* 109 Cal.App.2d 316 [240 P.2d 710].) ▮▮ In *California Lettuce Growers* v. *Union Sugar Co.,* 45 Cal.2d 474, 487 [289 P.2d 785, 49 A.L.R.2d 496], it was stated, ''While Civil Code, section 3301, provides that no

damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin, the fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery.''

There are two variables here which necessarily make the determination of damages an estimate. One is the copper content of the ore and the other is the price of copper during the year for which performance was specified. Roark's testimony concerning the copper content of the ore, based on assays, was that 6.2 percent and 6.3 per cent ore was available; that considerable tonnage of shipping ore was available running 5 per cent or better; that a ledge of Monsonite carrying 8 per cent copper was located; that a high grade area of Cuprite ore, running from 5 per cent to 10 per cent copper content had been found, from which it appeared 10,000 to 15,000 tons could be taken; that 6,500 tons of 3 to 3.5 per cent copper ore were mined and stockpiled by June 18, 1957; and that there were areas of the mine which had no commercial copper content. With respect to the price of copper Roark testified that the market fluctuated between a high of 39 cents per pound in January of 1957 and a low of 23.5 cents in September, after which it rose to 26 cents or 27 cents at the end of the year.

The key testimony, upon which the trial court appears to have based its conclusions was given when Roark testified that in his opinion, he could have maintained consistent production of ore with 2.75 per cent copper content; and that the return on 2.75 per cent ore, at a price of 32 cents per pound, after deducting freight and smelter charges and landowner royalties, would be $2.60 per ton, or a total of $15,600 for 6,000 tons.

It appears that the trial judge chose the figure of 32 cents as a reasonable average price during the year. That this was his approach is borne out by his emphasis on that price during the latter portion of the trial. It also appears that he relied on Roark's testimony that he could consistently produce 2.75 per cent ore. It would not seem unreasonable to accord credence to this testimony in light of the other evidence relating to the copper content of ore in the mine, and an award of damages based on this testimony is not improper in light of the above cited authorities. Defendant argues that we don't know when the ore would have been shipped, and if it had all been shipped during the last six

months of the year there would have been a loss rather than a profit. It is true that we cannot be certain about the time when ore would have been shipped, but uncertainties of this sort are to be resolved against the defendant (see *Steelduct Co.* v. *Henger-Seltzer Co., supra*), and the court's finding that "if the performance mentioned in the bond had been rendered in a reasonable manner during the period for performance specified in the bond, there would have been returns to plaintiff . . . in the amount of $15,600.00" was not an improper basis of decision.

There was no objection at the trial level to Roark's testimony as to prices, so any objection on appeal that it was not the best evidence is without merit. Also without merit is the contention that plaintiff is entitled to only 80 per cent of the returns, and therefore his recovery should have been based on 4,800 tons rather than 6,000 tons. The action is on the bond, and there was no defense that plaintiff was not the real party in interest for the entire performance guaranteed by the bond.

A further contention of defendant is that plaintiff, upon discovering that the bond recited that he had agreed to advance money rather than race horses, came under a duty to reveal the true facts and surrender up the bond for cancellation. It places its reliance on *American National Bank* v. *Donnellan*, 170 Cal. 9 [148 P. 188, Ann.Cas. 1917C 744]. In that case the obligee solicited the guarantee, and at the time of negotiation he was aware of and failed to reveal facts which strongly bore on the nature of the risk assumed by the guarantor. It was held that he was under a duty to reveal the information. Here it was specifically found that plaintiff made no representations to defendant prior to the issuance of the bond; plaintiff had no negotiations or communications whatsoever with defendant prior to issuance or delivery of the bond; and that the principal, Roark, conducted all the negotiations for the bond and made application therefor. The Donnellan case, *supra*, at page 21, distinguishes this situation, saying, "The case, it is to be borne in mind, is not that where the surety or guarantor comes forward at the request of the debtor and simply offers to give the creditor a certain guaranty. In such cases the general holding is that no duty of disclosure is incumbent upon the creditor, since, he has asked nothing of the guarantor and without breach of any faith, he may assume that the debtor himself has informed the intending surety of all that the latter desires

to know." The same distinction may be made with respect to *Telford* v. *New York Life Ins. Co.*, 9 Cal.2d 103 [69 P.2d 835], cited by defendant.

Conceivably a duty to disclose might be imposed upon an obligee who did not negotiate with the surety for the execution of the bond, if it is patently clear that the facts affecting the risk were misrepresented by the principal, and that the surety does not possess knowledge of the true facts. This is not such a case. It was found by the trial judge that "as far as plaintiff was concerned, the 'Whereas' clause mentioned [containing the statement that plaintiff had agreed to advance money to Roark] was not in itself a part of the bond performance agreement and was or may have been included by the bonding company only as an interpretation or a representation made by the principal, Roark." This finding, taken together with another which states that it was Roark's intent to convert the race horses into cash immediately at the close of escrow, compel the conclusion that whatever circumstances there might have been which could create doubt in the mind of plaintiff as to whether defendant knew the true facts, they were not sufficiently compelling, in the light of plaintiff's remoteness from defendant in the transaction, to give rise to a duty to inquire of defendant whether or not it knew the facts.

The last contention of defendant is that the bond falls within the purview of Civil Code, section 1670, which provides that contracts calling for liquidated damages are void. This contention is without merit. The "Agreement of Exchange" between Roark and plaintiff called for payment of profits to plaintiff with a guarantee of $30,000 by Roark. This apparently was plaintiff's price for the horses. The purpose of the bond was to guarantee Roark's performance of his agreement. It can hardly be argued that an agreement to pay a specified sum for personal property is within section 1670. Similarly a guarantee of such a payment is not within the prohibition of the statute. The trial court found that plaintiff is not entitled to Roark's guarantee, and therefore the defendant is not obligated to pay it. The fact that plaintiff sought the entire amount at the trial, however, does not invalidate the bond. In *Weinreich Estate Co.* v. *A. J. Johnston Co.*, 28 Cal.App. 144, 150 [151 P. 667], it was stated that sections 1670 and 1671 "were intended to secure a just compensation for injuries, when they could be readily ascertained, and to protect parties in those cases from

improvident contracts. They were not intended, nor is it the policy of the law, to force a construction of a contract that will assign it to the prohibited class. . . .'' It must be ascertained from the terms of the agreement whether or not the parties intended to prescribe a penalty, and the use of the term, ''penalty'' is not controlling. (*Dyer Bros. Golden West Iron Works* v. *Central Iron Works,* 182 Cal. 588 [189 P. 445].)

Plaintiff's failure to amend his complaint (permission therefor having been granted) to conform to the proof of ''actual damages'' is not fatal. (See *First Nat. Bank* v *DeMoulin,* 56 Cal.App. 313, 323 [205 P. 92].)

The judgment is affirmed.

Ashburn, J., and McMurray, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.