514

5-3169                                      374 S. W. 2d 361

Opinion delivered January 20, 1964.

*Bob Scott, Walter Davidson,* for appellant.

*Dickson, Putman, Millwee* and *Davis,* for appellee.

CARLETON HARRIS, Chief Justice. This litigation involves an interpretation of Ark. Stat. Ann. § 28-348, Sub-section (d) , (Repl. 1962). The section, overall, deals with the taking of discovery depositions. The sub-section refers to the use of the depositions during the trial of a case, and reads as follows:

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.

(2) The deposition of a party or of any one who at the time of taking the deposition was an officer, director, or managing agent of a public or private corporation, partnership, or association which is a party may be used by an adverse party for any purpose."

Appellant, Wayne Mabry, a minor, was involved in an automobile collision with Dwight Nickell on January 16, 1962, on U. S. Highway 71, approximately one mile south of Lowell, Arkansas. Mabry was traveling north, and Nickell, traveling south, was immediately behind a south-bound truck, owned by appellee, Standard Rendering Company, hereinafter called Standard, and driven by appellee, G. W. Ross, Jr. As the two south-bound vehicles approached a hill, Ross (according to appellants' contention) signaled to Nickell[1] that all was clear, as far as approaching traffic was concerned, and Nickell went around and collided with the approaching Mabry vehicle on the southern portion of the crest of the hill. Thereafter, Wayne Mabry, and Major Mabry, his father, both in his own right, and as Father and Next Friend of Wayne, instituted suit against Standard, G. W. Ross, Jr., and Dwight Nickell. The complaint alleged, *inter alia*, that Ross was a servant and employee of Standard, acting within the scope of his employment on the occasion mentioned.[2] Negligence charged against appellees was based on the allegation that immediately before the collision, Ross signaled Nickell that it was proper and safe for Nickell to go around his (Ross') truck; and that Ross, with the exercise of ordinary care under the circumstances, should have known that it was unsafe for Nickell to pass. The complaint charged Nickell with negligence in failing to keep a proper lookout; failing to yield the right of way to Mabry's automobile; failing to maintain proper control of his automobile; and in relying upon

---

[1] Appellants contend that Ross gave this signal by blinking rapidly his left hand turn signal at the rear of the truck.

[2] This fact was subsequently admitted by the company in answering "Request for Admission of Facts."

the directions of Ross, by passing at a point where Nickell's view was inadequate to assure safe passage. Judgment was sought against the defendants, jointly and severally for the total sum of $6,876.85. Standard and Ross filed their answer, denying each and every material allegation, and further alleged that if appellants had been damaged, such damages were the result of the negligence of appellant, Wayne Mabry. A counter-claim was filed against Major Mabry, wherein it was alleged that the latter was guilty of negligence sufficient to bar his recovery by reason of knowingly entrusting his vehicle to a dangerous and incompetent driver, Wayne Mabry, and that Wayne Mabry, at the time of the collision, was acting as agent, servant, and employee of Major Mabry. In the alternative, appellees pleaded '' * * * that if Wayne Mabry was a bailee of the automobile owned by Major Mabry, then the damages to said automobile were the proximate result of the negligence of Wayne Mabry, and that the defendants, G. W. Ross, Jr., and Standard Rendering Co., are entitled to contribution from Wayne Mabry for any judgment rendered against them in favor of the plaintiff, Major Mabry.''

A cross-complaint was filed against Nickell, wherein appellees asserted that any injuries and damages sustained by appellants were the proximate result of the negligence of Nickell, and that Ross and Standard should have contribution over and against Nickell for any judgment which might be returned against appellees. Nickell then filed an answer and cross-complaint against appellees wherein he stated that he was following immediately behind the truck operated by Ross in behalf of Standard, and that Ross signaled to him that he could safely pass the truck which Ross was operating; that in so doing, the Nickell automobile collided with the Mabry automobile. By counter-claim against appellants, he also alleged negligence on the part of Mabry, asserting that the latter was traveling at an excessive and reckless rate of speed. The pleading set forth injuries and damages allegedly sustained by Nickell, and he sought judgment against Mabry and his father, and Ross and Standard, jointly

and severally, in the sum of $4,743.78. Appellants filed a reply to the counter-claim, denying all material allegations. Thereafter, by stipulation of the parties, the depositions of G. W. Ross, Jr., and Dwight Nickell were taken with all attorneys being present. When the case proceeded to trial, appellants attempted to introduce the depositions of Ross and Nickell as evidence in chief for the purpose of making a *prima facie* case against appellees, but the trial court, in separate rulings, excluded both depositions on the ground that Ross and Nickell were present in the court room, and therefore available to testify. Objections and exceptions were duly noted to this ruling. Because of the adverse ruling, appellants then called Ross and Nickell as witnesses. The testimony of Ross was substantially the same as that given in his deposition, and appellants make no contention of reversible error because of the exclusion of his deposition. However, the testimony of Nickell is asserted to be materially different from his deposition, and the oral testimony of this defendant did not make out a *prima facie* case of negligence on the part of Ross and Standard. There was no other witness presented to testify with regard to the alleged signal given by Ross to Nickell (to pass his truck), and Ross denied giving a signal. Thereupon, appellants rested, and the court sustained a motion for directed verdict for the appellees. The case proceeded on the remaining issues, and at the conclusion of the testimony, the court granted motions for directed verdicts in favor of appellees on the cross-complaint filed by Nickell, and in favor of appellants on the counter-claim filed by Nickell. The final issue was submitted to the jury, and it found for appellants against Nickell, awarding a judgment in the sum of $3,200.00. This judgment was entered on May 3, 1963. On May 15, Nickel filed a motion to quash the judgment, and prayed that all proceedings in the cause be dismissed against him for the reason "* * * * that the said defendant is and was at the time of the bringing of this cause under and incapacitated by virtue of a legal Guardianship; that the fact of the existence of the aforesaid Guardianship did not become known until subsequent to the entry and rendering of the judg-

518

ment herein and that a copy, duly certified, of the Letters of Guardianship are attached and made a part hereof as though set out word for word.''

On June 4, the court found that Nickell had been legally adjudged incompetent by the Probate Court of Washington County in 1957; that his brother had been appointed and qualified as guardian, and was still acting as legal guardian; that on the date of the trial ''Dwight Nickell was not competent to the degree required by law to testify or to legally have a judgment returned against him, and the motion to quash the judgment against Dwight Nickell should be sustained.'' The court then entered its order quashing and setting aside the judgment in favor of the Mabrys against Nickell, and further ordered that appellant's cause of action against this defendant be continued, subject to further orders of the court.

Appellents have appealed from the judgment of the Circuit Court rendered on May 3, insofar only as the judgment finds for Ross and Standard. The sole question before this court is whether the trial court erred in excluding the deposition of Dwight Nickell.

Before proceeding to discuss this issue, we might first point out that the reason given by the trial court for excluding the depositions of both Nickell and Ross was erroneous. The ruling of the court was based upon the fact that these persons were present in court and available for testimony. We have held that the presence of the party in court is no reason for exclusion of the deposition . In *Superior Forwarding Company* v. *Sikes,* 233 Ark. 932, 349 S. W. 2d 818, this court said:

''Next, appellants contend that the trial court erred in permitting the use of a deposition of Fred Russell, who was a party defendant. He was present in the courtroom and plaintiff had previously taken his discovery deposition. Ark. Stats. § 28-348 provides that the deposition of a party may be used by an adverse party for any purpose. Here Fred Russell was an adverse party to the plaintiff. Hence, it was perfectly proper to use his deposition.''

See also Volume 4, Moore's Federal Practice (Second Edition) Section 26.29, and *Cleary* v. *Indiana Beach, Inc.*, 275 F. 2d 543.

Appellees point out that the deposition was not offered as substantive evidence in the controversy between appellants and Nickell, but rather was offered as evidence in the separate controversy between the Mabrys and appellees. Appellees state:

"* * * Had·Appellants brought two separate suits, as they could have done, against Appellees and Nickell, it is clear that Nickell would have been simply a witness in the separate suit against Appellees, and his deposition would not have been admissible since he was not 'unavailable.' Appellees submit that the joinder statutes which are designed for economy of time and expense should not be used to permit a misapplication of the rules concerning use of deposition."

It is strongly argued that in the controversy between the Mabrys on the one hand, and Ross and Standard on the other, Nickell is not an adverse party to appellants. Appellees rely mainly upon the case of *Napier* v. *Bossard*, 102 F. 2d 467 (Second Cir. 1939), a case decided under New York law, but this case is not persuasive for the reason that the New York statute, at that time, did not contain the pertinent provisions of our statute, *viz*, "* * * any part or all of a deposition * * * may be used against *any*[3a] party who was present or represented at the taking of the deposition" and "* * * may be used by an adverse party for *any*[3b] purpose."

Appellees also contend that the purpose of the deposition was limited to discovery, and that no effort was made to frame questions in admissible form as a matter of preserving testimony. The stipulation for the. taking of Nickell's deposition does not so state, and the concluding sentence provides, "The right to except to all evidence adduced for incompetency, irrelevency and immateriality, is hereby expressly reserved." Of course, there was no agreement in advance that the deposition

[3a, 3b] Emphasis supplied.

would be used as evidence, as this would have bound all parties to testimony that they had not heard, but it certainly appears that the reservation of the right to except to introduction as contained in the quoted sentence would have been a meaningless gesture unless it had been contemplated that the deposition, or portions thereof, might be introduced.

Be that as it may, it is clear that our statute provides that the deposition may be used "against any party" and "for any purpose." To hold with appellees, it would be necessary to completely disregard the literal meaning of the quoted phrases. As pointed out by appellants, we would have to write into Sub-section (d) "The additional requirement that the deposition of a party may be used only 'against that party' contrary to its express language that it may be used 'against any party.' "

Accordingly, we reach the real question, *i.e.,* "Were appellants and Nickell adverse parties?" In *Mahoney* v. *Founders' Insurance Company,* 12 Cal. Rptr. 114, the District Court of Appeals for the Second District of California, declared that ". . . adverse parties are those who, by the pleadings, are arrayed on opposite sides."

In the citation from Moore's Federal Practice, previously mentioned, the author states, " 'Adverse party' as used in this rule is a term of art, and means a party whose interest in the case is adverse to that of another party, . . ." We are persuaded that appellants and Nickell come within the definition of "Adverse parties." The Mabrys instituted suit against Nickell, and Nickell filed a counter-claim against the Mabrys. Appellants obtained a judgment against Nickell. In fact, all parties appear to have been adverse to each other. The Mabrys sued appellees and Nickell. Appellees counter-claimed against appellant, Major Mabry, and cross-complained against Nickell; Nickell counter-claimed against appellants, and cross-complained against appellees. Having reached the conclusion that the Mabrys and Nickell were adverse parties, it follows that the court erred in not admitting the Nickell deposition. Of course, appellees

will have the opportunity to refute and rebut the evidence contained in the Nickell deposition, and may even subpeona Nickell for this purpose, if it develops that he is competent to testify when, and if, the case is re-tried.

This last brings us to the final argument advanced by appellees. They contend that the ruling of the trial court should be upheld because Nickell was not competent, to the degree required by law, to testify. The court entered its finding that Nickell was not competent to testify on the date of the trial; however, no finding was made as to Nickell's competency on the date of the taking of the deposition. The mere fact Nickell had been adjudged incompetent in 1957, and had never, by court order, been restored to competency, does not, within itself, establish that Nickell was incapable of testifying at the time of the taking of the deposition. Ark. Stat. Ann. § 28-601 (Repl. 1962) provides that certain persons shall be incompetent to testify. Among those declared incompetent to give testimony are the following:

"Persons who are of unsound mind at the time of being produced as witnesses, provided, however, that no person shall be denied the right to testify who is in possession of his or her mental faculties during a lucid interval, and provided further that it shall be within the sound discretion of the Trial Court to permit any person to testify who understands the obligation of an oath and who has sufficient understanding, and the fact that such person has been adjudged of unsound mind shall only affect his or her credibility as a witness, and the court shall so instruct the jury."

See also *Parker* v. *Walrath,* 232 Ark. 585, 339 S. W. 2d 121. Whether Nickell was competent to give the deposition is a matter that will have to be determined in future proceedings.

Because of the error, heretofore set out, the judgment is reversed, and the cause remanded to the Benton County Circuit Court with directions to proceed in a manner not inconsistent with this opinion.