**VULCAN CHEMICAL TECHNOLOGIES, INC., a Delaware corporation and Vulcan Materials Company, a New Jersey corporation, Petitioners,**

v.

**Phillip J. BARKER, a California resident, individually and doing business as Sabre Asia, Respondent.**

**No. 2:01CV00033.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

July 19, 2001.

Order Staying Opinion, Aug. 13, 2001.

William B. Poff, John Leslie Brownlee, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, Ray V. Hartwell, III, Thomas G. Slater, Jr., Hunton & Williams, Richmond, VA, Robert Lucas Hobbs, Woods, Rogers & Hazlegrove, Roanoke, VA, A. H. Gaede, Jr., Jeffrey M. Anderson, Bradley, Arant, Rose & White, LLP, Birmingham, AL, James M. Schurz, Morrison & Foerster, San Francisco, CA, for plaintiffs.

Stephen M. Hodges, Penn, Stuart & Eskridge, Abingdon, VA, Franklin Murray Tatum, III, Mark S. Yacano, Wright, Robinson, Osthimer & Tatum, Richmond, VA, Hartley T. Hansen, Kevin R. Culhane, Lorainne M. Pavlovich, Hansen, Boyd, Culhane & Watson, LLP, Sacramento, CA,

Hugh E. Comisky, Alturas, CA, for defendant.

## MEMORANDUM OPINION

WILLIAMS, Senior District Judge.

### I. INTRODUCTION.

This case is before the court on petitioners' motion to vacate an arbitration award. The challenged arbitration decision found that petitioners, Vulcan Chemical Technologies, Inc., (VCT) and Vulcan Materials Company, (VMC), breached a contract between the parties by terminating the respondent, Philip J. Barker, without cause and by breaching other obligations under the agreement. Having heard from all parties on brief and by way of oral argument, it is the opinion of the court that the petitioners' motion is ripe for decision. For the reasons stated below, petitioners' motion to vacate the arbitration award is GRANTED.

### II. BACKGROUND AND PROCEDURAL HISTORY

Petitioner, VCT, is a Delaware corporation with its principal place of business in Birmingham, Alabama. VCT was formerly known as Rio Linda Chemical Co., Inc. Rio Linda was acquired by VMC from A & W a Virginia corporation, in May 1995 and its name changed to VCT. VCT is a wholly owned subsidiary of VMC. Petitioner, VMC, is a New Jersey Corporation with its headquarters in Birmingham, Alabama. VMC owns and operates facilities within the City of Norton, Virginia and within the counties of Wise and Lee, also in Virginia. Respondent, Barker, is a resident of the state of California.

Paragraph K of the distribution contract, which is at the heart of this dispute, provides that the "agreement shall be construed in accordance with the laws of the Commonwealth of Virginia...parties agree to submit to the personal jurisdiction of the state or federal courts in Virgi-

nia." This court exercises jurisdiction pursuant to 28 U.S.C. § 1391 and venue is proper pursuant to 28 U.S.C. § 1391.

When A & W originally acquired Rio Linda in 1989, Barker entered into a five-year employment contract with the company as vice president of international sales. A provision of the contract provided that if Barker's employment contract was not renewed or was terminated, he would be able to purchase perpetual, exclusive rights to purchase and sell certain chemical products in four Asian countries through a distribution agreement between the parties. In 1995 when Barker's employment contract was not renewed, he exercised his option and purchased the distribution agreement. The purchase price, which had been calculated using a formula established by the employment contract, was $32,888.00. In return, Barker agreed to use his best efforts to promote and sell the product, to fully develop the market in those countries and to purchase all of the chemical products covered by the contract from VCT.

VCT terminated Barker for failure to perform under the contract effective March 10, 1999. On April 15, 1999, Barker filed an action in the Superior Court of California, County of Sacramento alleging claims against VCT and separate claims against VMC including that VMC was the alter ego of VCT. Based on the arbitration clause in the distribution agreement, VCT and VMC filed a motion to compel arbitration. The request for arbitration was granted by the California courts on December 13, 1999.

The arbitration was conducted by a single arbitrator. She found that Virginia had a substantial relationship to the controversy and therefore was a reasonable choice of law and would apply unless the law violated a fundamental policy of California. She further noted that Barker had

not shown that Virginia substantive law was contrary to a fundamental public policy of California. She stated the applicable law, as to all of the controverted issues, is essentially the same in both issues. "To the extent there is a difference in potential remedies, that is different than being contrary to public policy." (Interim Award dtd December 22, 2000, section IIIA.)

The parties filed their pre-hearing briefs in July 2000 and their closing and reply briefs in November 2000. The arbitrator issued an interim award on December 22, 2000 ruling that VCT had not proven there was good cause for Barker's termination and had breached the agreement by terminating Barker without cause and by breaching other obligations under the agreement. The arbitrator also found that VCT and VMC had failed to fulfill their obligations under the agreement. However, the arbitrator did rule in favor of VCT and VMC with respect to Barker's claims for tortious interference with contract, business defamation and unfair trade practices.

The interim award negated VMC and VCT's expert financial witness, agreeing with Barker's witness, and included a request for the parties to submit a calculation consistent with the arbitrator's determination of the relevant time frame, 1986–1990. In addition, the claimant was requested to submit a request for attorney's fees. The arbitrator reserved the determination of the alter ego issue and determined that no further submissions from either party would be allowed unless specifically requested or approved by the arbitrator.

VCT and VMC requested to be allowed to submit further information regarding the alter ego issue, which had not yet been determined by the arbitrator, but their request was denied.

On February 28, 2001 the arbitrator issued a determination regarding damages, attorney's fees, costs and interest and her decision regarding the alter ego issue.

The arbitrator found that the claimant had shown by a preponderance of the evidence that VMC is the alter ego of VCT. In addition, the arbitrator ordered VCT and VMC to pay $21,128,000.00 in damages, attorney's fees of $1,738,114.28 (which included an enhancement of 75% and included potential future attorney costs), costs of $253,125.28 to Barker; as well as the entire expense of the arbitration which included American Arbitration Association administrative fees and expenses of $20,800.00 (including reimbursing Barker for the portion of the fees he had already paid), compensation to the arbitrator of $115,574.00. The total amount awarded to Barker was $23,255,613.56. Final award in this matter was entered on March 21, 2001.

On March 23, 2001, VCT and VMC filed a petition in the United States District Court for the Western District of Virginia to vacate the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 10. Petitioners allege the arbitrator exceeded her power, manifestly disregarded the law, refused to hear pertinent and material evidence, and exhibited evident partiality. On April 5, 2001, Barker filed a petition to confirm arbitration award and for entry of judgment in the Sacramento Superior Court.

On April 12, 2001, respondent, Barker, filed a motion in this Court to dismiss, stay or abstain citing Vulcan's selection of the California Arbitration Act to force binding arbitration. Also, respondent alleges petitioner has advanced its claims in this specific court because it cannot advance its arguments to a court already familiar with both the facts and the law that apply to this case.

On May 11, 2001, respondent filed a motion to dismiss pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative to dismiss or to transfer the action pursuant to 28 U.S.C. 1406(a). On May 16, 2001, respondent filed a motion pursuant to Rule 201 of the Federal Rules of Evidence and Rule 44 of the Federal Rules of Civil Procedure to take notice of documents filed in and by the Superior Court of California.

On May 29, 2001 petitioners filed a motion to establish a hearing date and fix a filing deadline and May 30, 2001, they filed a motion to quash notice of hearing and a motion for immediate vacatur of arbitrator award.

The Court heard oral argument on respondent's motion to dismiss or transfer on May 17, 2001. The matter was taken under advisement and the Court issued a memorandum opinion on May 24, 2001 denying the motion to dismiss and denying the motion to transfer the order. In addition, the Court further ordered that respondent was enjoined from pursuing this matter in any other court in any jurisdiction until the court ruled on the petition to vacate the arbitration award. On the same day, respondent filed a notice of appeal to the Fourth Circuit Court of Appeals.

Respondent's appeal was heard in the Fourth Circuit Court of Appeal and on June 1, 2001 an order was entered staying the District Court order enjoining the respondent from pursuing this matter in other courts.

Petitioner appealed the order from the Fourth Circuit Court of Appeals filing a motion for reconsideration before a three judge panel. On June 4, 2001 the Fourth Circuit denied the motion for reconsideration. On June 5, 2001, respondent filed a motion to strike declarations of A.H. Gaede, Jr., Ejaz A. Kahn, Robert P. Schweihs and Robert Wallace. Respondent alleges these declarations include inadmissible hearsay and improper characterizations and opinion testimony.

On June 11, 2001, this court heard from both parties regarding the, motion for immediate vacatur of arbitrator award and motion to take judicial notice and motion to strike declarations. All parties were heard in oral argument in Big Stone Gap, Virginia and the motions and arguments were taken under advisement.

On June 12, 2001, respondents filed a motion to dismiss the motion to vacate on the grounds that this Court lacks subject matter jurisdiction under the Rooker–Feldman doctrine and under the 11th Amendment to the Constitution of the United States.

## III. STANDARD OF REVIEW

The Federal Arbitration Act, 9 U.S.C. § 10 permits a federal court to vacate an arbitration award where (1) the arbitrator exceeded her powers, (2) the arbitrator demonstrated evident partiality in conduct of the arbitration or (3) the arbitrator refused to hear evidence pertinent and material to the controversy such that a party's rights were prejudiced. Id. § 10(a)(2), (3), (4). In addition, the 4th Circuit has held that an award should be vacated if it shows a manifest disregard of applicable law. *See In re A.H. Robins Co., Inc.*, 236 B.R. 337, 345 (E.D.Va.1999), *aff'd, In re A.H. Robins, Inc. v. Dalkon Shield Claimants Trust*, 202 F.3d 257, 2000 WL 6140 (4th Cir.2000) (table).

## IV. DISCUSSION

Respondent's motion to dismiss the action citing the Rooker–Feldman doctrine and the 11th Amendment of the Constitution is hereby denied. Respondent argues that this Court lacks jurisdiction because a California court has already entered final judgment in the matter. However, this motion to vacate was filed as an indepen-

dent action before any other action was completed in state court and was filed to vacate an arbitrator's award, not in response to a state court ruling. Therefore the motion is DENIED.

■ When the parties to a contract have agreed that any dispute between them shall be resolved to arbitration, and such arbitration is conducted, the court may only vacate the award if one of the grounds established by U.S.C. § 10(a) exists or if the arbitrator has shown a manifest disregard for the applicable law. An arbitrator gets her power and authority from the contract and any decisions that come out of arbitration must draw their essence from the contract itself. An award that does not draw its essence from the agreement must be vacated if there is no reasonable way it can be construed from the agreement. For this Court to vacate the arbitration award in contest, a careful examination of the allegations made by petitioner balanced against the provisions of the contract and applicable law must be conducted.

## A. LIABILITY PROVISION OF PARAGRAPH E

■ The first issue petitioner alleged is that the arbitrator exceeded the authority granted by the parties' agreement when she refused to enforce a clear provision of the agreement, specifically paragraph E, last sentence which stated "[n]either party shall be liable to the other for any indirect, incidental, or consequential damages, including losses or liabilities related to lost profits, prospective profits or loss of good will." Petitioner argued this sentence provided a limit to the damages that could be awarded under the contract and any deviation from this provision by the arbitrator exceeded the authority given to her by the contract. Petitioner argued that the fourth and fifth sentences in paragraph E which explain the parties liability for "loss-

es, damages, liabilities, costs or expenses, regardless of cause of whether in tort or contract, related directly or indirectly to the handling, shipment, use, storage sale or resale of the Chemical products" was intended to completely discuss liability with regard to third parties and therefore the final sentence must be a general liability statement between the parties. Respondent argued that the language in paragraph E must be read in the context of the entirety of the clause and is intended to apply to a limitation on third-party liability only.

For the reasons stated below the court finds that the last sentence of paragraph E is a general statement of liability between the parties and therefore, the arbitrator's award of indirect, incidental, and consequential damages, including losses or liabilities related to lost profits and prospective profits, did not draw its essence from the agreement between the parties.

Each paragraph of the agreement is separate and distinct and deals with a separate and distinct point. The first sentence in each paragraph in the contract is a topic sentence and the rest of the paragraph follows in the same subject. For example, paragraph B deals with the Distribution of Chemical products. Each separate topic under that heading is delineated by a separate number, paragraph B1 discusses the exclusivity of the distributorship, paragraph B2 discusses price for the chemicals including how each party shall interact when there is a dispute; in addition, separate paragraphs in B2 are used to discuss sales price, accounting practices, and payment terms.

Paragraph E is entitled "limitation of liability" and begins by stating "Rio Linda shall not be liable for any defective Chemical Products supplied to Distributor unless Rio Linda receives written notice...after

delivery to Distributor's customer..."[1] Each sentence of the paragraph discusses different topic limiting liability between the supplier and the distributor. The final sentence of paragraph E does not state in any way that it refers to third party liability therefore, the court must read the contract as a whole and give the sentence its plain meaning.

The fourth and fifth sentences of paragraph E of the distribution agreement discuss aspects of third party liability. The fourth discusses the distributor's liability for storage, handling, transportation, resale or use of the product while the fifth establishes that the distributor will have no liability for the same. These sentences do not include liability for profits or good will. Therefore, the last sentence of paragraph E discusses a different type of liability and is not duplicative of earlier language.

The court notes that if the arbitrator's view of this issue were to prevail the parties to this distribution agreement would have insulated themselves from suits by third parties and given up their right to sue a third party to the contract. The court finds it hard to believe anyone in their right mind would give away the right to sue someone who is not a party to the contract. Also on the other hand if this clause meant that third parties cannot recover against the parties to the contract it would be an illegal contract. The principals to the contract cannot legally bind a person who is not a party to that contract. Therefore, the court finds that the last sentence of paragraph E is a general statement of liability between the parties and therefore, the arbitrator's award of indirect, incidental, and consequential damages, including losses or liabilities related to lost profits and prospective profits, did not draw its essence from the agreement between the parties.

## B. VCT AS THE ALTER EGO OF VMC

■ In the final award the arbitrator stated the following in regard to the alter ego issue, "The arbitrator finds that claimant [Barker] has shown by a preponderance of the evidence that Vulcan Chemical Technologies, Inc., is the alter ego of Vulcan Materials Company, Inc., based upon the application of either Virginia or California law. Respondents [Vulcan] have not shown by a preponderance of the evidence that a different result should be obtained. As to the application of Virginia versus California law, it was previously determined that 'Virginia law will apply unless that law violates a fundamental policy of California.' It is clear that application of Virginia law assuming arguendo that it would not support piercing the corporate veil would clearly violate a fundamental policy of California. California's interest in protecting its citizens from a civil wrong and concomitant right to redress for that wrong is clearly paramount to any interest of Virginia." This court finds it very odd that the arbitrator would come to this conclusion without citing any controlling legal authority on the issue, in either Virginia or California courts. Furthermore, the arbitrator made a finding that, absent a legal basis for piercing the corporate veil of VCT, California public policy would demand that the VMC be held responsible for the acts of its subsidiary VCT. The arbitrator's reasoning for this was that California has an interest in protecting its citizens from civil wrongs. However, the arbitrator states no reason why Barker's rights could not be addressed against VCT only.

The arbitrator in her opinion cites to no evidence on the record that pertains to the issue of VCT as the alter ego of VMC. She simply states that based upon the prepon-

1. Rio Linda is the predecessor in interest to VCT.

derance of the evidence produced by Barker that VCT is the alter ego of VMC[2]. Likewise, neither party has been able to point out to the court any evidence in the record which supports a finding that the corporate veil of VCT should be pierced placing liability for VCT upon VMC, its parent corporation. The mere fact that one corporation owns an interest in another company does not suffice to make the parent liable for the subsidiaries acts. Clearly, both California and Virginia law support this conclusion. In *Northern Natural Gas Co. v. Superior Court,* the California Court of appeals stated that a parent corporation is not liable for the acts of its subsidiary simply because of stock ownership. *See Northern Natural Gas Co. v. Superior Court,* 64 Cal.App.3d 983, 991, 134 Cal.Rptr. 850 (1976). In California, the issue of piercing the corporate veil is a question that is to be decided by the trier of fact. *See Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal.App.2d 825, 836–837, 26 Cal.Rptr. 806 (1962). In fact, the California courts have decided that a two part test should be used to determine if the corporate veil should be pierced. In *Automotriz etc. De California v. Resnick,* the court stated that the two general requirements were, "(1) that there be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, and inequitable result will follow." *Automotriz etc. De California v. Resnick,* 47 Cal.2d 792, 796, 306 P.2d 1 (1957). Clearly, there is insufficient evidence in the record to come to the conclusion that VCT was the alter ego of VMC based upon the record before the court.

Virginia law as it applies to piercing the corporate veil is similar to the law as it stands in California. In *Beale v. Kappa Alpha Order and Kappa Alpha Alumni Foundation,* the Virginia Supreme Court held that, "before the corporate entity may be properly disregarded and the parent corporation held liable for the acts of its subsidiary, I believe it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the complainant, and that unjust loss or injury will be suffered by the complainant." *Beale v. Kappa Alpha Order and Kappa Alpha Alumni Foundation,* 192 Va. 382, 396–397, 64 S.E.2d 789 (1951). There is no way that the mere fact that VMC owned stock in VCT could be construed to meet the burden set forth above by the Virginia Supreme Court.

Therefore, this court finds that under either California or Virginia law there is insufficient evidence to support the finding that VCT is the alter ego of VMC. As for the public policy issue as stated by the arbitrator the court can find no reasons why Barkers suit against VCT standing alone would not suffice to protect California's interest in this case. The court feels that it is necessary to note here that no reasons were given by the arbitrator for the application of this public policy. For the reasons stated above this court finds that evidence now before the court is insufficient to support the arbitrators determination that VCT is the alter ego of VMC, accordingly VMC is relieved of liability in this case and any damages are to be taxed solely against VCT.

**2.** The court is also of the opinion that the arbitrator was arbitrary and capricious, and exceeded her authority in denying the petitioner's motion to present evidence on the alter ego issue.

## C. AWARD OF DAMAGES

█ Petitioners third issue is the amount of damages awarded to Barker by the arbitrator. Petitioner argued the arbitrator exceeded her authority by awarding Barker damages that did not compensate him for actual losses. They characterized the excessive damage award as "punitive" and argue the final award was "grossly overcompensatory..."

Respondent argued the arbitrator's determination of damages was correct and her use of Mr. Ueltzen's computation of damages does not evidence a partiality on the part of the arbitrator.

Paragraph E of the distribution contract precludes the award of damages that are "indirect, incidental or consequential...including loses or liabilities related to lost profits, prospective profits..." While this Court is of the opinion that, because of the provisions of Paragraph E, it is not necessary to go beyond the contract, it should be pointed out that Virginia law generally prevents the award of future lost profits. Even under California law, businesses are not awarded losses based on speculation and any lost profits must be proven.

Both Virginia and California cases sited by the arbitrator illustrate this point well. In *Goldstein v. Kaestner*, 243 Va. 169, 413 S.E.2d 347 (1992), the court emphasized that "a plaintiff is not required to prove the exact amount of his damages however, he is required to show sufficient facts and circumstances to permit a jury to make a reasonable estimate of those damages." *citing Murray v. Hadid*, 238 Va. 722, 731, 385 S.E.2d 898, 904 (1989). Likewise, California courts cite California code which states "the measure of damages, except where otherwise expressly provided for by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby..." *Tibbs v. George Kevorkian Accountancy*

*Corp.*, 226 Cal.App.3d 442, 455, 277 Cal. Rptr. 40 (1990) citing CAL CIV. § 3300.

The arbitrator's decision did not cite any specific rationale for the damages awarded, nor did she explain in any detail, how she arrived at the award of $21,128,000.00. Therefore, this court is left to imagine how the award was made. The arbitrator, in determining the issue of damages adopted the methodology for determining damages that was established by Barker's expert witness, Ueltzen. She determined that this distribution agreement could not be analyzed strictly as a new business because of the history of the business and Barker's own background and experience. She awarded damages based on a business opportunity that Barker "might be available to [Barker]". She found that second tier profits were not speculative and included 100% of licensing fees as profit due Barker. The contract between Barker and Vulcan began on April 1, 1996 and was terminated on March 31, 1999. Yet, the arbitrator used data from almost ten years before to establish lost profits in her award.

Barker paid $32,888 for the rights to the distribution of the chemicals in the territory covered by the contract. This figure was based on the profits from sales in the territory during the two years previous to the sale. This court finds it difficult to believe that an award of over $21 million dollars could be based on the sales during the three years Barker had the contract. In fact, the arbitrator awarded $5,877,498.00 in lost profits for 1996–1999 years when actual sales revenues were only $410,119.00.

The arbitrator also cited cases that illustrate future profit determination for a new business in the award of damages. These cases show the extremely narrow instances in which damages will be awarded based on future profits. The Virginia case cited

by the arbitrator involved a new business that had been established in anticipation of the privatization of two child support offices of the Virginia Department of Social Services. It was pointed out that this business would normally fall within the "new business rule" established by Virginia courts. The "new business rule" is used to preclude award of damages for a new business because it does not have a record of earnings from which to establish losses. A new business is exempted because it is a "speculative venture, the successful operation of which depends on future bargains, the status of the market, and too many other contingencies to furnish a safeguard in fixing the amount of damages." *Lockheed v. Maximus,* 259 Va. 92, 109, 524 S.E.2d 420, 429 (2000). The court in *Lockheed* determined that Maximus did not have a record of profits from which losses could be accurately determined, nevertheless, damages were awarded in this case. Maximus was able to prove lost profits, based on collection businesses it was currently operating in other areas and evidence of collections conducted by the two offices it contracted to replace. The availability of exact figures on which the court could base the award of lost profits is the factor that enabled the plaintiff to prevail on this issue in *Lockheed.*

Similarly, in a California case also cited by the arbitrator, *Mahoney v. Founders Ins. Co.,* 190 Cal.App.2d 430, 12 Cal.Rptr. 114 (1961), the plaintiff was awarded damages based on lost profits which the court was able to ascertain by the use of specific calculations provided by the plaintiff. In *Mahoney,* although it was a new business, profits were awarded as a result of a failure to ship copper ore, even though the profits were based on variables in copper content of the ore shipped and fluctuations in the price of copper. The court held "award of damages for lost prospective profits will be sustained if there is a satisfactory basis for estimating the probable earnings that would have been received if the contract had been performed." Id. at 436, 12 Cal.Rptr. at 117, *citing Mann v. Jackson,* 141 Cal.App.2d 6, 12, 296 P.2d 120, 124. The court determined that while it was not necessary to prove the damages with "absolute certainty," it was necessary to prove them with "reasonable certainty." The plaintiff in *Mahoney* was able to prove the lost future profits by expert testimony that established the content of the ore that could have been mined by plaintiff as well as the expected price expected for the ore during that time. Similar to Lockheed, the plaintiff in this trial was able to prevail because the data he presented included enough specific data from which future earnings could be predicted with reasonable certainty. Therefore, the court was able to calculate and award damages to the plaintiff.

In her decision, the arbitrator stated the business endeavor begun by Barker did not fit neatly into a niche, not being a new business yet not having the record of profits which would be available in an established business. She used data from a similar business venture Barker was involved in approximately 10 years before the beginning of the subject contract to establish evidence for use in the calculation of Barkers lost profits. This court is of the opinion that the time frame which was accurate for calculation of lost profits was the time in which Barker was in business before the contract was breached. Three years is sufficient for a business to establish a record of profit from which damages can be ascertained.

However, assuming that Barker's business should be treated as a new business, there are significant differences between the cases cited by the arbitrator and the case at hand. Specifically, in contrast to the cases cited by the arbitrator for the award of damages to a new business,

Barker's lost profits were mere speculation and did not arise from any contract that Barker actually had in place. The only contract cited was one which "might have been available" not one which was definite, as were the contracts in the *Lockheed* and *Mahoney* cases. Further, Barker's distribution rights involved the Asian countries of Japan, South Korea, Taiwan and the People's Republic of China. As cited in *Lockheed,* the status of the market is one factor which must be considered. *Id* at 109, 524 S.E.2d at 429. The market in these countries has always been speculative at best. These markets are especially volatile considering the uncertain nature of U.S. diplomatic relations with South Korea, Taiwan and the People's Republic of China and trade agreements with Japan. It is hard to imagine a situation in which anyone could predict well enough into the future to enable them to reach a conclusion on these markets with any degree of certainty.

All damages awarded in this case, including the award of attorneys fees and costs are hereby remanded to the arbitrator for reevaluation in a manner consistent with Virginia law and the conclusions of this court. To be specific, in accordance with the provisions of paragraph E of the distribution agreement, damages awarded shall be those that are compensatory only and may not include anything prohibited by the contract or Virginia law.

## V. CONCLUSION

For the reasons stated above, petitioners' motion to vacate the arbitration award is hereby GRANTED. The parent company, VMC, has been released from liability in this action and any damages shall be obtained from VCT, final judgment is therefore granted in favor of VCM. The issue of damages is remanded to the arbitrator for a determination not inconsistent with this opinion. In accordance with the provisions of paragraph E of the distribu-

tion agreement, these profits shall be those that are compensatory only and may not include any damages prohibited by paragraph E of the contract. The arbitrator's award of attorney's fees is also hereby VACATED and the attorneys fees shall be recomputed to consist of time spent before the arbitrator only and not time spent before this or any other court including future attorney's fees The court will issue an appropriate order.

### ORDER

For the reasons stated in the Memorandum Opinion entered this day, petitioners' motion to vacate the arbitration award is hereby GRANTED. The parent company, VMC, has been released from liability in this action. and any damages shall be obtained from VCT, final judgment is therefore granted in favor of VCM. The issue of damages is remanded to the arbitrator for a determination not inconsistent with this opinion. In accordance with the provisions of paragraph E of the distribution agreement, these profits shall be those that are compensatory only and may not include any damages prohibited by paragraph E of the contract.

The arbitrator's award of attorney's fees is also hereby VACATED and the attorneys fees shall be recomputed to consist of time spent before the arbitrator only and not time spent before this or any other court including the award of future attorney's fees.

The Clerk is directed to send certified copies of this Order to all counsel of record. This case shall be stricken from the docket.

### ORDER

This day came the parties to be heard on defendants' motion for a stay of this court's Order of July 19, 2001. After hearing argument of counsel, the court is of the

opinion that the motion should be granted and the judgment of the court is hereby stayed pending final action of the United States Court of Appeals for the Fourth Circuit.

The Clerk is directed to send certified copies of this Order to all counsel of record.